1   **WO**

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9   James Stickle; Eleanor Riggio; Frank)        No. CV 08-083-PHX-MHM
    Acuna; Joseph Biernacki; Gordon Farmer;)
10  Rhealyn Holland; Richard Lamasters;)         **ORDER**
    Kenneth Allen, et. al, on behalf of)
11  themselves and all employees similarly)
    situated,                             )
12                                        )
                  Plaintiffs,             )
13                                        )
    vs.                                   )
14                                        )
                                          )
15  SCIWestern Market Support Center, L.P.)
    a/k/a SCI Western Market Support Center,)
16  Inc.; SCI Eastern Market Support Center,)
    L.P.; SCI Houston Market Support Center,)
17  L.P.;   SCI   Funeral   and   Cemetery)
    Purchasing Cooperative, Inc.; Service)
18  Corporation International; Jane D. Jones;)
    Gwen Petteway; Thomas Ryan; Curtis)
19  Griggs; the SCI 401K Retirement Savings)
    Plan; and Julie Douglas,              )
20                                        )
                  Defendants.             )
21                                        )
                                          )
22  _____)

23          This action arises out of alleged violations of the Fair Labor Standards Act of 1938,

24  as amended, 29 U.S.C. § 201 *et seq.*, based on a purported failure to pay wages to certain

25  employees of SCI subsidiary companies.   Plaintiffs also asserts derivative claims for

26  purported violations of the Employment Retirement Income Security Act, 29 U.S.C. §

27  1332(a)(3), 29 U.S.C. § 1104(a)(1), 29 U.S.C. § 1059(a)(1); and the Racketeer Influenced

28  and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, based on Defendants' alleged

FLSA violations.  The Complaint names as Defendants numerous entities and individuals, each of whom, Plaintiffs assert, was an employer, joint employer, or alter ego for purposes of the FLSA claim.

Presently pending before the Court are three Motions to Dismiss filed by various Defendants.  Two motions seek dismissal of certain Defendants based on the lack of personal jurisdiction (Fed.R.Civ.P. 12(b)(2)), and on Plaintiffs' failure to state a claim upon which relief may be granted (Fed.R.Civ.P. 12(b)(6)).  One of these motions has been filed by Defendants SCI Eastern Market Support Center, L.P., ("SCI Eastern") and SCI Houston Market Support Center, L.P. ("SCI Houston").  The second motion has been filed by individual Defendants Jane D. Jones, Gwen Petteway, Thomas Ryan, Curtis Briggs, and Julie Douglas (the "Individual Defendants").

The third motion is entitled "Motion to Dismiss or Strike pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(6), and 12(f)."  This Motion was filed by Defendants Service Corporation International ("SCI"), SCI Funeral and Cemetery Purchasing Cooperative, Inc., ("the Cooperative"), SCI Western Market Support Center, L.P., ("SCI Western"), and SCI 401K Retirement Savings Plan (the "Plan").

Defendants' Motions to Dismiss have characteristics similar to a Motion for Summary Judgment, including the citation to documents outside the pleadings.  However, the parties have all indicated they would like to proceed without converting the Motions to Dismiss to a Motion for Summary Judgment.

Also pending is Plaintiffs Motion for an Equitable Toll of the Statute of Limitations. All four Motions are fully briefed.  In addition, the parties have submitted supplemental briefing regarding the compatibility of FLSA opt-in and Rule 23 opt-out actions in the same action.  After reviewing all papers submitted and hearing oral argument, the Court issues the following Order.

## BACKGROUND

This action arises out of alleged violations of the Fair Labor Standards Act of 1938, as amended, 29 US.C. §201 *et seq.* ("FLSA"), based on purported failures to pay wages to certain employees of subsidiary companies of Service Corporation International, a Texas corporation ("SCI").  Plaintiffs' Complaint also asserts derivative claims, two under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1332(a)(3), 29 U.S.C. § 1104(a)(1), 29 U.S.C. § 1059(a)(1) – one claim for failure to keep adequate records sufficient to determine benefits due and one claim for breach of fiduciary duty – and a derivative claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("RICO").  The Complaint names as Defendants numerous entities and individuals, each of whom, Plaintiffs assert was an employer, joint employer or alter ego for purposes of the FLSA.  (Compl. ¶ 29).

In their Complaint, Plaintiffs assert that they worked for Defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and a half for hours they worked over 40 hours a week.  Plaintiffs claim it was Defendants' policy not to pay for certain compensable work Plaintiffs regularly performed.  Plaintiffs provide the following examples of Defendants' policies and practices that Plaintiffs' argue have deprived Plaintiffs of their earned wages and wage premiums.

Subclass A:  Defendants implemented an "On Call Pay Policy."  Under the policy, employees perform work by handling calls and other work related issues after normal business hours, but Defendants did not compensate employees for all such "on call" work performed.

Subclass B:  Defendants implemented a "Community Work Policy."  Under the policy, Plaintiffs contend that employees performed "community work" so as to increase Defendants' revenues but that Defendants did not compensate the employees for such time spent in community work in furtherance of the employer's business under the "Community Work Policy."

1     Subclass C: Defendants implemented a "Training Compensation Policy." Under the

2     policy, employees would take various types of training but Defendants did not pay for such

3     training, despite having employees attend such training.

4     Subclass D: Defendants implemented a "Pre-Needs Appointment Policy." Plaitiffs

5     contend that under this policy, employees would meet with clients to discuss pre-need

6     purchases. To the degree that such appointments were not considered part of the employees'

7     schedule, the employees were suffered or permitted to continue the appointments, but were

8     not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants'

9     management have attempted to justify this policy on the grounds that the employee would

10    likely receive a commission if the client purchased a pre-needs product.

11    Subclass E: Defendants implemented a "Meal Break Deduction Policy." Under the

12    policy, Defendants did not pay for meal breaks but would often have employees perform

13    work during such meal breaks. Plaintiffs contend that time spent on meal "breaks" was

14    deducted from the employee's pay even when Defendants suffered or permitted work to be

15    performed during such "breaks."

16    Subclass F:   Defendants implemented a "Pre-Approval for Overtime Pay

17    Policy."Under this policy, Plaintiffs assert that Defendants only permitted payments for

18    overtime if the overtime was pre-approved.

19    Subclass G: Defendants implemented an "Unrecorded Work Time Policy." Under

20    this policy, Plaintiffs contend that employees performed work but their hours were not

21    recorded. Plaintiffs claim that Defendants then refused to pay for the time worked under the

22    "Unrecorded Work Time Policy" because, even though Defendants knew such time had been

23    worked, it had not been "recorded."

24    Subclass H: Defendants' policy was to not include all remuneration (such as bonuses

25    and commissions) in the calculation of Plaintiffs' overtime.

26    Plaintiffs further contend that Defendants failed to make, keep and preserve adequate

27    and accurate records of the employment of Plaintiffs concerning their wages, hours and other

28                                                - 4 -

1   conditions of employment.  More specifically, the records kept by defendants failed to

2   adequately and accurately disclose among other things, hours worked each work day, the

3   total hours worked each work week and/or the total overtime compensation for each work

4   week.

5           In addition, Plaintiffs assert that Defendants devised, intended to devise, and carried

6   out a scheme to cheat Plaintiffs out of their property and to convert Plaintiffs' property,

7   including their wages and/or overtime pay.  Plaintiffs contend that Defendants' scheme

8   consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs

9   their regular or statutorily required rate of pay for all hours worked in violation of federal

10  law.  In executing or attempting to execute the scheme, Plaintiffs assert that Defendants

11  repeatedly mailed payroll checks, either directly to Plaintiffs or between Defendants'

12  business locations. Plaintiffs assert that these mailings occurred on a regular basis and more

13  than 100 such mailings occurred in the last 10 years.

14          In their Motions to Dismiss, SCI Eastern, SCI Houston, and the Individual Defendants

15  contend that the Court lacks personal jurisdiction over them.  Specifically, these Defendants

16  claim they are non-residents of the State of Arizona with insufficient minimum contacts with

17  the state and they have not purposefully availed themselves of the privilege of conducting

18  activities in the state, such that personal jurisdiction over them cannot be established.

19          In their Motion to Dismiss, SCI, the Cooperative, and SCI Western claim that

20  Plaintiffs cannot establish liability against them under the FLSA.  SCI claims that it is a

21  holding company with no employees, and therefore it is not liable under the FLSA.

22  Similarly, the Cooperative and SCI Western claim that Plaintiffs have not alleged sufficient

23  allegations to maintain an FLSA claim against them.  These Defendants, along with the Plan,

24  also claim that Plaintiffs' ERISA claims should be dismissed because they are "entirely

25  dependent upon [Plaintiffs] FLSA claims and thus are unripe unless and until Plaintiffs first

26  establish an FLSA violation.  In addition, these Defendants claim that Plaintiffs' RICO

27  claims should be dismissed because Plaintiffs' mail fraud allegations are entirely predicated

28

1    on purported violations of wage and hour laws, which, Defendants claim, the Ninth Circuit

2    has held cannot be maintained based on a failure to pay overtime.  These Defendants also

3    claim that Plaintiffs cannot maintain their Rule 23 class action allegations regarding their

4    ERISA and RICO claims because the Rule 23 opt-out class is incompatible with Plaintiffs'

5    proposed FLSA § 216(b) opt-in class, and Plaintiffs' ERISA and RICO claims are dependent

6    upon finding an FLSA violation.  In the same Motion to Dismiss, the Plan asserts that it

7    should be dismissed because Plaintiffs have failed to assert a claim against it.  Finally, SCI

8    also argues that it should be dismissed for lack of personal jurisdiction.

9                                                    **DISCUSSION**

10   **I.      PERSONAL JURISDICTION**

11            **A.      LEGAL STANDARD – RULE 12(B)(2)**

12            Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move

13   to dismiss for lack of personal jurisdiction.  The plaintiff then bears the burden of

14   demonstrating that jurisdiction exists.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d

15   797, 800 (9th Cir. 2004).  The plaintiff "need only demonstrate facts that if true would

16   support jurisdiction over the defendant."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir.

17   1995); Fields v. Sedgwick Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986).

18   Uncontroverted allegations in the complaint must be taken as true.  AT&T v. Campagnie

19   Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).  However, the court may not assume

20   the truth of such allegations if they are contradicted by affidavit.  Data Disc, Inc. V. Systems

21   Technology Associates, Inc., 557 F.2d 1280, 1284 (9th Cir. 1977).  Conflicts in the evidence

22   must be resolved in the plaintiff's favor.  AT&T, 94 F.3d at 588.

23            If the material facts are controverted or if the evidence is inadequate, a court may

24   permit discovery to aid in determining whether personal jurisdiction exists.  Data Disc, Inc.,

25   557 F.2d at 1285 n.1.  If the submitted materials raise issues of credibility or disputed

26   questions of fact, the district court has the discretion to hold an evidentiary hearing in order

27   to resolve the contested issues.  Id.

28                                                      - 6 -

1    There are two independent limitations on the court's power to exercise personal

2    jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and

3    constitutional principles of due process. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.

4    1990); Data Disc, Inc., 557 F.2d at 1286. Arizona's jurisdictional statute is co-extensive with

5    federal due process requirements; therefore, jurisdictional inquiries under state law and

6    federal due process standards merge into one analysis. Arizona's long-arm statute provides

7    for personal jurisdiction to the extent permitted by the Due Process Clause of the United

8    States Constitution. Ariz. R. Civ. P. 4.2(a); see also Uberti v. Leonardo, 181 Ariz. 565, 569,

9    892 P.2d 1354, 1358, cert. denied, 516 U.S. 906 (1995) (stating that under Rule 4.2(a),

10   "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent

11   allowed by the federal constitution").

12   The exercise of jurisdiction over a non-resident defendant violates the protections

13   created by the due process clause unless the defendant has "minimum contacts" with the

14   forum state such that the exercise of jurisdiction "does not offend traditional notions of fair

15   play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66

16   S.Ct. 154 (1945). Personal jurisdiction may be either general or specific.

17   General jurisdiction exists where the defendant's contacts with the forum state are so

18   substantial or continuous and systematic that jurisdiction exists even if the cause of action

19   is unrelated to those contacts. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d

20   1082, 1086 (9th Cir. 2000). The standard for establishing general jurisdiction is "fairly

21   high." Id.; Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986). The defendant's

22   contacts must approximate physical presence in the forum state. Schwarzenegger, 374 F.3d

23   at 801.

24   Specific jurisdiction exists where the cause of action arises out of or relates to a

25   defendant's activities within the forum. Data Disc, Inc., 557 F.2d at 1286. Specific

26   jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must

27   purposefully direct its activities or consummate some transaction with the forum or a resident

28

1  thereof; or perform some act by which it purposefully avails itself of the privilege of

2  conducting activities in the forum, thereby invoking the benefits and protections of its laws;

3  (2) the claim must be one which arises out of or results from the defendant's forum-related

4  activities; and (3) the exercise of jurisdiction must be reasonable.  Lake v. Lake, 817 F.2d

5  1416, 1421 (9th Cir. 1987).  Each of these conditions is required for asserting jurisdiction.

6  Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

7  　　　A showing that a defendant "purposefully availed" itself of the privilege of doing

8  business in a forum state typically consists of evidence of the defendant's actions in the

9  forum, such as executing or performing a contract there.  Schwarzenegger, 374 F.3d at 802.

10  The requirement of purposeful availment ensures that the defendant should reasonably

11  anticipate being haled into the forum state court based on its contacts.  World-Wide

12  Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559 (1980).  The purposeful

13  availment test is met where "the defendant has taken deliberate action within the forum state

14  or if he has created continuing obligations to forum residents."  Ballard, 65 F.3d at 1498.

15  　　　The second prong of the specific jurisdiction test requires that the claim arise out of

16  or result from the defendant's forum-related activities.  A claim arises out of a defendant's

17  conduct if the claim would not have arisen "but for" the defendant's forum-related contacts.

18  Panavision Int'l v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998).

19  　　　Once the plaintiff has satisfied the first two prongs, the defendant bears the burden of

20  overcoming a presumption that jurisdiction is reasonable by presenting a compelling case

21  that specific jurisdiction would be unreasonable.  Burger King Corp. v. Rudzewicz, 471 U.S.

22  462, 472-73, 105 S.Ct. 2174 (1985); Haisten v. Grass Valley Medical Reimbursement Fund,

23  Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).  Seven factors are considered in assessing whether

24  the exercise of jurisdiction over a non-resident defendant is reasonable:  (1) the extent of the

25  defendant's purposeful interjection into the forum state's affairs, (2) the burden on the

26  defendant, (3) conflicts of law between the forum state and the defendant's home jurisdiction,

27  (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial

28

resolution of the dispute, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. <u>Caruth v. International Psychoanalytical Ass'n</u>, 59 F.3d 126, 128 (9th Cir. 1995); <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 623 (9th Cir. 1991).

A defendant may move, prior to trial, to dismiss the complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). The mode of its determination is left to the trial court. <u>See</u> <u>Gibbs v. Buck</u>, 307 U.S. 66, 71-72 (1939). The limits the district judge imposes on the pre-trial proceedings will affect the burden the plaintiff is required to meet. <u>Data Disc</u>, 557 F.2d at 1285. For example, if the court requires only affidavits or affidavits and discovery materials, then a plaintiff must make only a prima facie showing of jurisdiction to overcome a defendant's motion to dismiss. <u>Id.</u> (citation omitted).

This is not to say that a prima facie showing alone guarantees a trial on the merits. If the materials received by the court reveal controverted questions of fact and issues of credibility bearing on the jurisdictional question, the court may, in its discretion, resolve the disputed issues with the aid of additional evidence taken at a preliminary hearing. <u>Id.</u> at 1285. At that time, the plaintiff is required to establish jurisdiction by a preponderance of the evidence. <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936).

## B.   ANALYSIS

SCI Eastern, SCI Houston, and the Individual Defendants have moved to dismiss the case against them arguing that this Court lacks personal jurisdiction over them because they have essentially no contact with the State of Arizona and have done nothing to avail themselves of any rights or benefits accorded under Arizona law. Further, these Defendants assert that they have not attempted to or consummated any business in the state, nor have they initiated litigation or otherwise sought the benefits or protections of the laws of the state. Finally, these Defendants contend they have not been regularly present in the state for any purpose. These Defendants argue, therefore, the purposeful availment prong has not been met and the Court cannot exercise jurisdiction over them.

1    The Plaintiffs concede that this Court lacks general jurisdiction over SCI Eastern, SCI

2   Houston, and the Individual Defendants.

3    Regarding specific jurisdiction, Plaintiffs contend that Defendants purposefully

4   directed activities within the State of Arizona.  Plaintiffs assert that the Court should consider

5   the substance, rather than the forum, of the activities alleged in determining personal

6   jurisdiction.  See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d

7   1392, 1398 (9th Cir. 1986).  Plaintiffs claim that wage and hour cases, like the instant case,

8   warrant consideration of the effects of Defendants' conduct as opposed to the location where

9   that conduct occurred.  See El-Hakem v. BJY, Inc., 2001 WL 34043760 at *3 (D. Or. August

10   15, 2001) (purposeful availament "is satisfied when the defendant is alleged to have engaged

11   in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the

12   forum state"); Chao v. Benitez Drywall, LLC, 2007 WL 781760 at *4 (S.D. Tex. 2007)

13   (using the quality and nature of a nonresident's contacts with the forum state, rather than the

14   number of contacts, in determining specific jurisdiction).

15             **1.    SCI EASTERN AND SCI HOUSTON**

16    SCI Eastern and SCI Houston claim that Plaintiffs cannot prove any of the facts

17   required for this Court to assert personal jurisdiction over them.  Defendants contend that

18   Plaintiffs have proffered no evidence that either SCI Eastern or SCI Houston were involved

19   in creating, adopting, or enforcing any of the employment policies complained of in

20   Plaintiffs' Complaint.

21    In support of their position, Defendants point to the declarations of Robert Pisano and

22   Jane Petteway filed in support of SCI Eastern and SCI Houston, which state that SCI Eastern

23   and SCI Houston: (1) never entered into any contracts, employment or otherwise, with any

24   of the Plaintiffs in this action; (2) never employed or supervised the employment of any of

25   the Plaintiffs; and (3) never provided any management, administrator, counting, data

26   processing, or human resource services within the State of Arizona or to any business entity

27   doing business in the State of Arizona.

28

In an effort to contradict Defendants' declarations, Plaintiffs cite the declaration of Judith M. Marshall filed in the case of <u>Prise et al. V. Alderwoods Group Inc., et al.</u>, (W.D.Pa. No. 06-1641), now pending in the Western District of Pennsylvania.  Plaintiffs cite Ms. Marshall's declaration as stating that "the three SCI Support Centers,[1] together, provide 'all . . . human resources services' at defendants' locations."  Pls' Resp. at 4:22.  However, Plaintiffs have provided this quote out of context, quoting only a snippet of Ms. Marshall's declaration, and giving a skewed impression of her actual statement.  In fact, Ms. Marshall declared, in pertinent part, as follows:

> [The] day-to-day human resources and support for individual locations are provided by three separate companies – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., and SCI Houston Market Support Center, L.P.  Each of these entities has a Management Services Agreement *with the locations in their region of the country* that states that they will provide all executive, management, administrative, accounting, data processing, and human resources services *for the locations*.

Complaint, Appendix B – Judith M. Marshall dec. ¶ 4 (emphasis added).  Thus, Ms. Marshall's declaration does not support that all three SCI Support Centers provide human resources for all employees country-wide as Plaintiffs contend.

Plaintiffs further assert that SCI Eastern and SCI Houston, along with SCI Western, employ a "single line management model to streamline the organization and ensure operational efficiencies," by which SCI Eastern and SCI Houston, along with SCI Western, would have purposefully directed activities into the state by managing employees here. Compl. ¶ 45.  However, Plaintiffs provide no citation for this statement.  Moreover, even if Plaintiffs' assertion is true, based on the evidence presented, a single line management model most likely would originate with the Cooperative and, with regard to this jurisdiction, would carry through to SCI Western.   In fact, Ms. Marshall's declaration quoted above

---

[1] The "SCI Support Centers" refers to SCI Western, SCI Eastern, and SCI Houston.

1  demonstrates that each regional SCI has a management services agreement with the locations
2  *in that region*.

3  Plaintiffs point to other allegations in the Complaint that, they claim, demonstrate that
4  SCI Eastern and SCI Houston have purposefully directed activities within the forum state.
5  For example, Plaintiffs allege that the SCI Support Centers provide on-sight training (Compl.
6  at ¶41), nationwide training (Id. at ¶43), a newsletter and intranet site through which
7  defendants communicate with their nationwide employees (Id. at ¶43), benefit plans for
8  employees (Id. at ¶43), a payroll department (Id. at ¶44), and centralized employment records
9  and payroll information (Id. at ¶44),  along with a "centralized management." Plaintiffs
10  contend that these services coupled with SCI's "single line management model," establish
11  SCI Eastern and SCI Houston's activities in the forum state.

12  However, Plaintiffs have misconstrued these claims from Defendants' declarations.
13  For example, Plaintiffs cite Ms. Marshall's declaration when claiming that SCI Support
14  Centers provide on-sight training, but Ms. Marshall's declaration actually states that field
15  personnel and training departments affiliated *with the various human resources providers* at
16  each of the field locations provide on-sight training.  Compl., App. B – Judith M. Marshall
17  Decl. at ¶6.  Regarding nationwide training, Plaintiffs refer to "Dignity University training
18  programs," which are provided by the Cooperative, not SCI Eastern or SCI Houston.
19  Regarding the newsletter and intranet site to which Plaintiffs refer, the weekly newsletter
20  "Frontline," is published by the Cooperative.  Likewise, the "Global Village" intranet site
21  also is operated and maintained by the Cooperative.  Id. at ¶ 7.  Similarly, benefit plans are
22  administered by the Cooperative.  Compl., App. C – Gwen Petteway Decl. at ¶ 5.  Finally,
23  with respect to the employment records and payroll information, Plaintiffs cite the
24  Declaration of Liana Jensen.  Ms. Jensen states that in relation to Prise v. Alderwoods Group,
25  Inc. et al., she contacted the payroll departments of both Alderwoods Group, Inc. and the
26  Cooperative.  Compl., App. D – Liana Jensen Decl. at ¶ 3.  Ms. Jensen also states that she
27  accessed a database with current and former employees of SCI subsidiaries.  Id.  Ms. Jensen

28

does not directly state who controls this database but in the very next sentence, she states that she asked a senior data analyst at the Cooperative to perform databases searches of employees. <u>Id.</u> Thus, it appears that the Cooperative controls the employee database. It also appears that Plaintiffs' references and attempts to establish that SCI Eastern and SCI Houston have some connection to Arizona are insufficient to establish specific personal jurisdiction. Moreover, Defendants have provided W-2s for the named Plaintiffs employed in Arizona showing that they are employed by the Cooperative, which has not filed a motion to dismiss. Thus, Plaintiffs have not met the first prong of the test to establish specific jurisdiction as to SCI Eastern and SCI Houston. Accordingly, SCI Eastern and SCI Houston's Motion to Dismiss is granted.

## 2. INDIVIDUAL DEFENDANTS

The Individual Defendants claim that they have not purposefully directed conduct into the forum state, or a resident thereof, without which, they are not subject to personal jurisdiction here.

Plaintiffs claim that each Individual Defendant has directed activity into the forum state through the operation of their employment. Plaintiffs contend that the Individual Defendants have made no attempt to deny or even address the allegations in the Complaint that they are subject to specific jurisdiction here; nor have they attempted to deny that they are Plaintiffs' employers. Thus, Plaintiffs assert, this demonstrates the Individual Defendants' inability to disprove Plaintiffs' jurisdictional assertions.

The Individual Defendants have filed the Declaration of Nicholas P. Forestiere in support of their Motion. In his declaration, Mr. Forestiere, who is an attorney representing the Individual Defendants, seeks to have the Court take judicial notice of <u>Taghulk Proprietary, Ltd. et al. v. Service Corp Int'l, Inc. et al.</u>, NDCA, No. 99-5151 (2000). In <u>Taghulk</u> the court in the Northern District of California found that SCI was not subject to personal jurisdiction in California. However, <u>Taghulk</u> is distinguishable because it pertained to jurisdiction in California, and because it considered jurisdiction in the context of a patent

1    and trademark infringement action; it did not consider jurisdiction with regard to SCI's

2    employment policies and activities or in the context of a wage and hour lawsuit.

3         In addition, it is relevant to note, as Plaintiffs point out, that the court in Taghulk made

4    its personal jurisdiction determination after the parties had had an opportunity to conduct

5    discovery.  The parties in the instant case have yet to conduct discovery.  If material facts are

6    controverted or if the evidence is inadequate, a court may permit discovery to aid in

7    determining whether personal jurisdiction exists.  Data Disc, Inc., 557 F.2d at 1285 n.1.  If

8    the submitted materials raise issues of credibility or disputed questions of fact, the district

9    court has the discretion to hold an evidentiary hearing in order to resolve the contested issues.

10   Id.  As shown below, Plaintiffs have made a *prima facie* showing that Individual Defendants

11   Jane D. Jones, Gwen Petteway, and Curtis Briggs are subject to personal jurisdiction.

12   However, the Court directs the parties to conduct discovery as to this Court's exercise of

13   jurisdiction over Individual Defendants Thomas Ryan and Julie Douglas.

### a)       JANE JONES

15        In her declaration, Jane Jones states that she is a resident of Houston, Texas and works

16   as Vice President of Human Resources for SCI.  Ms. Jones states that at no time has she

17   "hired, terminated, or supervised any of the plaintiffs nor any other employees of any funeral

18   establishment, cemetery or other local facility that is owned by a subsidiary of Service

19   Corporation International, including any such funeral establishments, cemeteries or other

20   local facilities located in the State of Arizona."  Declaration of Jane D. Jones ¶ 12.  Ms. Jones

21   further states that she has not had minimum contacts with the state.  Id. at ¶¶ 3-12.

22   Therefore, Ms. Jones argues that she is not subject to specific jurisdiction here.

23        Plaintiffs contend that as Vice President of Human Resources for SCI, Ms. Jones, has

24   directed activities within this forum by "oversee[ing] human resources, training and

25   education, and payroll and commission services – activities that assist approximately 20,000

26   employees in North America."  Compl. ¶ 142.  Plaintiffs have alleged that Ms. Jones is

27   "responsible for, provides direction and control over, and is authorized to direct all aspects

28                                              - 14 -

of human resources functions across SCI's network." Compl. ¶ 143. Plaintiffs have further alleged that Ms. Jones is actively involved in the creation of the wage and hour policies at issue in this lawsuit, including the "On Call Pay Policy, Community Work Policy Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime." Compl. ¶ 144.

Though Ms. Jones contends that she has not hired, terminated, or supervised the SCI employees involved in this lawsuit, nor any other employees of SCI, including SCI locations in Arizona, she has not contested the allegations that she is actively involved in the policies that affect these employees. As stated above, uncontroverted allegations in the complaint must be taken as true. AT&T, 94 F.3d at 588. Conflicts in the evidence must be resolved in the plaintiff's favor. Id.. Thus, through Ms. Jones' asserted involvement with the human resources policies affecting SCI employees across the country, including Arizona, Plaintiffs have met the "purposeful availment" prong of the Lake test. See Lake, 817 F.2d at 1421.

Regarding the second prong of the test – "arising out of" or resulting from the Defendant's forum-related activities – applying the Panavision Int'l "but-for" test, the question is but for Ms. Jones' involvement with the policies affecting Arizona SCI employees, would Plaintiffs' claims have arisen? See Panavision, 141 F.3d at 1316. Based on Plaintiffs' assertion in their Complaint that Ms. Jones "oversees human resources . . . that assist approximately 20,000 employees" (Compl. at ¶ 142), the answer is no.

Finally, the third prong of the Lake test requires that jurisdiction be reasonable. See Lake, 817 F.2d at 1421. The Individual Defendants have the burden to establish that this Court's exercise of jurisdiction over them would not be reasonable. Defendants argue that it would be "manifestly unreasonable" to require them to defend themselves "in a distant forum with which they have clearly had no contact." Defs' Reply at p. 7. However, in light of Ms. Jones' position and her responsibilities within the Company, she has not established

1    that exercising jurisdiction over her here would be unreasonable.  Accordingly, Ms. Jones'

2    Motion to Dismiss is denied.

3                           **b)      GWEN PETTEWAY**

4           Gwen Petteway is a resident of Brazoria County, Texas and is employed by the

5    Cooperative as a director of human resources.  Compl. Appendix C.  In her Declaration, Ms.

6    Petteway states that in performing her job she works with the SCI Houston Market Support

7    Center in Houston and does not have minimum contacts with the State of Arizona.  Def's

8    Response, Exh. 5, at p. 2.  Therefore, Ms. Petteway argues, she should not be subject to

9    personal jurisdiction here.

10          Plaintiffs assert that Gwen Petteway directed activities with this forum state through

11   her job responsibilities, which include familiarity "with the human resources services of the

12   subsidiary and affiliate company of SCI, as well as training and benefits provided by those

13   companies."  Compl. ¶ 166.  Further, Plaintiffs claim that Ms. Petteway has admitted that,

14   as Human Resources Director, her job responsibilities include "day-to-day human resources

15   services and support for [defendants'] funeral home locations."  Compl. ¶ 167.

16          Though Ms. Petteway claims that she has not hired, terminated, or supervised the SCI

17   employees involved in this lawsuit, she has stated that she is the director of human resources

18   for SCI Houston and that day-to-day human resources services are provided in part by SCI

19   Houston. Compl., Appendix C.  Ms. Petteway also has stated that the Cooperative, for whom

20   she is employed, creates and distributes employee handbooks or manuals and that the

21   Cooperative administers benefit plans.  Id.  As a director of human resources, employed by

22   the Cooperative, it appears that Ms. Petteway is subject to personal jurisdiction here.

23          The second prong of the test is also satisfied because but for Ms. Petteway's actions

24   as director of human resources employed by the Cooperative, these claims would not have

25   arisen.  See Panavision, 141 F.3d at 1316.

26

27

28                                            - 16 -

1   Finally, in light of the allegations against Ms. Petteway and her position in the

2   Company, Ms. Petteway has not established that the exercise of jurisdiction over her would

3   be unreasonable.  Accordingly, Ms. Petteway's Motion to Dismiss is denied.

4   <center>**c)**   **THOMAS RYAN**</center>

5   Thomas Ryan is a resident of Houston, Texas.  Mr. Ryan is an employee of SCI

6   Executive Services, Inc., and serves in the position of President and Chief Executive Officer

7   of SCI.  In his declaration, Mr. Ryan claims not to have any ownership interest in any of the

8   funeral establishments, cemeteries and other local facilities owned by a subsidiary of SCI.

9   Decl. of Thomas Ryan ¶ 3.  Mr. Ryan further claims not to have minimum contacts with the

10  state.  Id. at ¶¶ 4-12.  Therefore, Mr. Ryan claims not to be subject to personal jurisdiction

11  here.

12  Plaintiffs assert that Mr. Ryan directed activities within the forum state by acting as

13  President and Chief Executive Officer of SCI and by actively managing SCI and the SCI

14  network, including those activities related to Defendants' employment-related policies and

15  decisions.  Compl. ¶¶ 191-92.

16  As President and Chief Executive Officer of SCI and by virtue of this position, it

17  appears that Mr. Ryan may have a role in affecting employment related policies within the

18  SCI network of companies.  In fact, in contrast to the other Individual Defendants' affidavits,

19  Mr. Ryan's affidavit omits the statement that he has not participated in hiring, termination,

20  or supervision of Plaintiffs or other employees in Arizona.  However, the allegations about

21  Mr. Ryan in Plaintiffs' Complaint are based either on information and belief or on Mr.

22  Ryan's authority due to his position.  Thus, the Court finds it appropriate to require discovery

23  as to Mr. Ryan's alleged involvement in the alleged claims.  See Data Disc, Inc., 557 F.2d

24  at 1285 n.1 (stating that if the evidence of one's personal jurisdiction is inadequate, a court

25  may permit discovery to aid in determining whether personal jurisdiction exists).

26  ///

27  ///

28  - 17 -

1

### d)    CURTIS BRIGGS

2       Curtis Briggs is a resident of Houston, Texas and serves as senior corporate counsel

3   for the Cooperative. Defs' Mot. to Dismiss, Exh. 1, at p. 2.  In his declaration, Mr. Briggs

4   asserts that he has never actively managed any funeral establishment, cemetery or other

5   facility for SCI in Arizona.  Id.  Mr. Briggs also states that at no time has he hired,

6   terminated, or supervised any of the Plaintiffs or other employee of SCI or an SCI subsidiary

7   located in Arizona.  Id.

8       Plaintiffs contend that Curtis Briggs has directed activities within this forum through

9   his involvement with SCI-affiliated entities, including that Mr. Briggs makes decisions

10  concerning SCI affiliates' employment-related policies pertaining to human resources,

11  training, payroll, and benefits.  Resp. at p. 6; Compl. at ¶ 221.

12      Mr. Briggs claims not to have "actively managed" any SCI subsidiary in Arizona nor

13  to have hired, terminated, or supervised Plaintiffs or any employee of SCI or SCI subsidiary

14  employee in Arizona.  However, Mr. Briggs does not claim that his work with employment-

15  related policies pertaining to human resources, training, payroll, and benefits for SCI

16  affiliates have not affected Plaintiffs or other SCI or SCI subsidiary employees.  As senior

17  corporate counsel with authority to make employment-related policies, it appears Mr. Briggs

18  has purposefully directed activities into this state.

19      Second, Plaintiffs have established that but for Mr. Briggs' employment-related policy

20  decisions, Plaintiffs would not have filed the instant lawsuit.

21      Finally, based on all of the information presented Mr. Briggs has not established that

22  the exercise of jurisdiction over him would be unreasonable.  Accordingly, Mr. Briggs is

23  subject to personal jurisdiction here.

### e)    JULIE DOUGLAS

24

25      Finally, Julie Douglas resides in Houston, Texas and serves as an employee benefits

26  manager for the Cooperative.  In her Declaration, Ms. Douglas states that she is not, nor has

27

28                                          - 18 -

1  she ever been, the Plan Administrator for the SCI 401K Pension Plan.  Defs' Motion to

2  Dismiss, Exh. 2 (Doc. 54-2).

3       Plaintiffs contend that Julie Douglas has directed activities within this forum through

4  her administration of the Defendant SCI 401K Retirement Savings Plan (the "Plan") (Compl.

5  ¶ 33), in which Plaintiffs – including Arizona residents – are or were eligible to participate

6  (Compl. ¶ 31).

7       Ms. Douglas claims not to be the Plan administrator, whereas Plaintiffs assert that she

8  is the Plan administrator.  As stated above, if material facts are controverted, a court may

9  permit discovery to aid in determining whether personal jurisdiction exists.  Data Disc, Inc.,

10  557 F.2d at 1285 n.1.  Thus, the Court finds it appropriate to require discovery as to Ms.

11  Douglas' position at the Cooperative and what, if any, work she does or has done with the

12  Plan.

13  **I.  FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE**
14  **GRANTED – RULE 12(B)(6) ASSERTION**

15      **A.  LEGAL STANDARD**

16       A motion to dismiss for failure to state a claim will be denied unless it is "clear that

17  no relief could be granted under any set of facts that could be proved consistent with the

18  allegations."  Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing

19  Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  A complaint must contain a "short and

20  plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a).

21  "Each averment of a pleading shall be simple, concise, and direct. No technical forms of

22  pleading or motions are required."  Fed.R.Civ.P. 8(e).  These rules "do not require a claimant

23  to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules

24  require is 'a short and plain statement of the claim' that will give the defendant fair notice

25  of what the plaintiff's claim is and the grounds on which it rests."  Conley v. Gibson, 355

26  U.S. 41, 47 (1957).

27  ///

28                              - 19 -

1

### B.   FLSA CLAIM

2      Under the FLSA plaintiffs may maintain claims only against "employers" for whom

3   they worked as "employees."   See 29 U.S.C. § 216(b) (an action to recover for unpaid

4   overtime compensation under the FLSA may be "maintained against any employer . . . by

5   any one or more employees . . . ."

6      Defendant SCI as a holding company and Defendants the Cooperative, SCI Western,

7   and the Plan (the "Corporate Defendants"), move  to dismiss the FLSA claim arguing that

8   Plaintiffs cannot establish that they are Plaintiffs' employer or Plaintiffs' joint employer.[2]

9   In support of their position, Defendants cite Benshoff v. City of Virginia Beach, 180 F.3d

10   136, 140 (4th Cir. 1999) and Choe-Rively v. Vietnam Veterans of Am., 135 F.Supp. 2d 462

11   470 (D. Del. 2001).   However, neither Benshoff nor Choe-Rively are precedent here.

12   Furthermore, both Benshoff and Choe-Rively discuss FLSA claims in the context of

13   summary judgment.

14      Defendants spend a substantial portion of their Motion discussing litigation between

15   these same parties in the Western District of Pennsylvania.  Defendants' discussion includes

16   citations and quotations in the Pennsylvania proceedings.  The Corporate Defendants' main

17   argument appears to be that this Court should dismiss the FLSA claim against them because

18   the Western District of Pennsylvania court did not allow an FLSA claim to proceed there.

19   However, not only are the Pennsylvania hearings outside the pleadings, they also have no

20   precedential authority here.

21      In contrast, Plaintiffs assert that their FLSA claim should not be dismissed because

22   the Corporate Defendants are Plaintiffs' employers.  Plaintiffs contend, at the motion to

23   dismiss stage Plaintiffs are not required to conclusively prove Defendants' employer status.

24

25      [2]  In a footnote to their Motion to Dismiss, SCI Eastern and SCI Houston state that

26   they join this Motion.  However, because the Court dismissed SCI Eastern and SCI Houston
   for lack of personal jurisdiction, the Court will not consider them with regard to the Motion

27   to Dismiss the FLSA claim.

28

1 Rather, at this stage, Plaintiffs contend, they are only required to provide Defendants
2 adequate notice of the claims against them and the grounds for those claims.

3      In support of their FLSA claim, Plaintiffs also refer to the declarations submitted in
4 the Pennsylvania litigation and attached to their Complaint in which SCI stated that its
5 human resources and employment functions are the responsibility of SCI Western, SCI
6 Eastern, SCI Houston, and the Cooperative.

7      The FLSA broadly defines the "employer-employee relationship[s]" subject to its
8 reach. Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947). "'Employ' includes
9 to suffer or permit to work." 29 U.S.C. § 203(g). "'Employer' includes any person acting
10 directly or indirectly in the interest of an employer . . . ." Id. § 203(d). The FLSA's
11 definition of employee has been called the "'broadest definition that has ever been included
12 in any one act.'" United States v. Rosenwasser, 323 U.S. 360, 363 n. 3 (1945) (quoting 81
13 Cong.Rec. 7,657 (1938) (statement of Sen. Black)).

14      Regulations promulgated under the FLSA recognized that an employee may have
15 more than one employer under the FLSA. 29 C.F.R. § 791.2 ("A single individual may stand
16 in the relation of an employee to two or more employers at the same time . . . ."). When more
17 than one entity is an employer for purposes of the FLSA, the entities are termed "joint
18 employers." Id. The Ninth Circuit has specified that whether an entity is an employer under
19 the FLSA is a question of law that must be determined by applying the economic reality test.
20 Torres-Lopez v. May, 111 F.3d 633, 638, 639 (9th Cir. 1997) (citing Bonnette v. California
21 Health and Welfare Agency, 704 F.2d 1465, 1469, 1470 (9th Cir. 1983); Real v. Driscoll
22 Strawberry Associates, Inc., 603 F.2d 748, 754 (9th Cir. 1979)). Under the economic reality
23 test, a court must "consider the totality of the circumstances of the relationship, including
24 whether the alleged employer has the power to hire and fire the employees, supervises and
25 controls employee work schedules or conditions of employment, determines the rate and
26 method of payment, and maintains employment records." Hale v. State of Arizona, 993 F.3d
27 1387, 1394 (9th Cir. 1993) (citing Bonnette, 704 F.2d at 1470).

28

Defendants cite <u>Singh v. 7-Eleven, Inc.</u>, 2007 WL 715488 at *3 (N.D. Cal. Mar. 8, 2007), which states that to be a joint employer, a defendant must have operational control over the plaintiffs' work, such as the "power to hire and fire the employees, supervise[] and control[] employee work schedules or conditions of employment, determine[] the rate and method of payment, and maintain[] employment records." However, the order in <u>Singh</u> was issued at the summary judgment stage of the case. Defendants contend that this distinction is irrelevant, as Defendants cite it for the *criteria* for finding two entities joint employers. However, the Court is not inclined to preclude Plaintiffs from an opportunity to conduct discovery to discover evidence that meets the criteria expounded in <u>Singh</u>.

Defendants cite many documents outside the pleadings in an effort to dismiss the instant claims against them. However, at the motion to dismiss stage Plaintiffs need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Defendants cite the recently-decided antitrust case of <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (holding that a plaintiff's obligation on a motion to dismiss is to provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action"), in an effort to argue that Plaintiffs' allegations here are insufficient. However, <u>Twombly</u> does not apply a new regime whereby plaintiffs must set forth proof of their claims to overcome a motion to dismiss. Instead, <u>Twombly</u> directs that a complaint must meet a standard of "plausibility," rather than merely "possibility." <u>Id.</u> at 1974.

During oral argument, Defendants again asserted that Plaintiffs Complaint does not meet the <u>Twombly</u> standard and point to the November 15, 2007 transcript of a hearing before the Honorable Joy Flowers Conti, United States District Court for the Western District of Pennsylvania in <u>Prise et al. v. Alderwoods et al.</u>, No. 06-16431 (W.D. Pa. November 15, 2007), in which Judge Conti found that plaintiffs' proposed amended complaint did not meet the <u>Twombly</u> test there. Judge Conti stated that the plaintiffs' proposed amended complaint does not allege fact but, rather, it alleged disguised legal conclusions. Defendants stated that

this transcript was incorporated in the Complaint.  However, this transcript actually was submitted in the Affirmation in Response to Defendants' Motion to Dismiss or Strike and to Dismiss Complaint Pursuant to FRCP 12(b)(2) and FRCP 12(b)(6) (Doc. 90).  Nevertheless, the Court considers Defendants' assertion but does not find it compelling.  It is the Court's understanding that Judge Conti did not dismiss the claims in <u>Alderwoods</u> but simply did not allow plaintiffs there to amend to add the SCI defendants.  In addition, although there are some allegations in the Complaint based on "understanding and belief" the Court finds that the Complaint does include sufficient facts to meet the <u>Twombly</u> "plausibility" test.

Defendants assert that in Plaintiffs' Complaint, they have set forth only very broad-based conclusions without factual underpinnings, thereby falling short of the <u>Twombly</u> standard.  The Court disagrees with Defendants' interpretation of Plaintiffs' Complaint. Without determining whether the <u>Twombly</u> pleading standard applies outside of the context of antitrust cases, the Court finds that Plaintiffs have met the <u>Twombly</u> "plausibility" requirement.  <u>Twombly</u>, 127 S.Ct. at 1974.

### 1. SCI WESTERN

The Complaint alleges sufficient facts to overcome Defendants' Motion to Dismiss Plaintiffs' FLSA claim as to SCI Western.  Specifically, the Complaint alleges, based on Defendants' sworn admissions which are attached to the Complaint, that the SCI Support Centers provide "day-to-day human resources services and support for individual locations," including "all executive, management, administrative, accounting, data processing, and human resources services for [Defendants'] locations."  Compl. at ¶ 40.  In addition, Plaintiffs complaint alleges that SCI Western provides "Dignity University training programs," by which Defendants ensure uniform services at nationwide locations, publish and maintain the weekly newsletter "Frontline," and the "Global Village" intranet site through which Defendants communicate with their nationwide employees, and administer benefits plans for employees and contract with third-party benefit providers to respond to questions related to day-to-day benefits services. Compl. at ¶¶ 42-43. These allegations are

1   sufficient to meet the totality of the economic realities test to overcome the instant Motion

2   to Dismiss as to SCI Western.

3           **2.      THE COOPERATIVE**

4           The Complaint alleges sufficient facts to overcome Defendants' Motion to Dismiss

5   Plaintiffs' FLSA claim as to the Cooperative.   Specifically, the Complaint cites sworn

6   declarations the Defendants submitted in the Western District of Pennsylvania litigation and

7   alleges that the Cooperative provides human resources service and support for the SCI

8   Support Centers, including SCI Western.  Compl. at ¶ 74.  The Complaint also alleges that

9   Defendants have admitted that the field personnel and training departments affiliated with

10  the Cooperative provide "on-site training at funeral homes and cemeteries." Compl. at ¶ 76.

11  Further, the Complaint alleges that Defendants have admitted that the Cooperative publishes

12  and maintains the weekly newsletter "Frontline," and the "Global Village" intranet site,

13  through which Defendants communicate with their employees nationwide.  Compl. at ¶ 77.

14  Additionally,  the  Complaint  asserts  that  the  Cooperative  administers  benefits  by

15  "contract[ing] with third-party benefit providers to respond to questions related to day-to-day

16  benefits services, such as local provider questions, access to online services, and benefits

17  provider contact information.  To the extent that those third-party providers cannot respond

18  to questions, [the Cooperative] will respond." Compl. at ¶ 78. Finally, the Complaint alleges

19  that  the  Cooperative  maintains  a  payroll  department  and  "a  database  that  contains

20  information on current and former employees of SCI subsidiaries."  Compl. at ¶ 79.  These

21  allegations are sufficient to meet the totality of the economic realities test to overcome the

22  instant Motion to Dismiss as to the Cooperative.

23          **3.      SCI**

24          The Complaint alleges sufficient facts to overcome Defendants' Motion to Dismiss

25  Plaintiffs' FLSA claim as to SCI.  Specifically, Plaintiffs have alleged that SCI and its

26  affiliates employ "a single line management model in an effort to streamline the organization

27  and ensure that operational efficiencies [are] achieved throughout the SCI network."  Compl.

28

at ¶ 111.  The Complaint also alleges, that SCI maintains control and authority over its affiliate companies and that it oversees human resources and employment functions, such as hiring and firing employees, supervision and control of work schedules or conditions of employment, determination of rate and methods of pay, and maintenance of employment records.  Compl. at ¶¶ 113-14, 127-30.  These allegations are sufficient to meet the totality of the economic realities test to overcome the instant Motion to Dismiss as to SCI.

The Court finds that Plaintiffs have sufficiently pled their FLSA claim to overcome Defendants' Rule 12(b)(6) Motion to Dismiss.  Accordingly, the Court denies Defendants' Motion to Dismiss as to Plaintiffs' FLSA claim.

## C.   ERISA CLAIMS

Defendants assert a number of arguments as to why Plaintiffs' ERISA claims should be dismissed.  First, Defendants argue that Plaintiffs' ERISA claims are unripe because they are derivative of, and entirely dependent upon, Plaintiffs' FLSA claim, which Plaintiffs have yet to establish and because they are contingent on future events (the future events as Defendants present them are the following: (i) Plaintiffs needing to succeed on the merits of their FLSA claim for overtime and wages; and (ii) a refusal of the Plan Administrator to approve credits after reviewing claims submitted through the Plan's review procedures).  Second, Defendants argue that Plaintiffs' Section 1132(a)(1)(B) claim fails for failure to exhaust administrative remedies.  Third, Defendants assert that ERISA does not provide for a private cause of action for a record-keeping.[3]  Finally, Defendants argue that Plaintiffs' breach of fiduciary duty claim fails because Plaintiffs have not established that Defendants owed Plaintiffs a fiduciary duty.

///

///

---

[3] Both Defendants' failure to exhaust argument and their record-keeping argument pertain to Claim II, Plaintiffs' 29 U.S.C. § 1132(a)(3) ERISA claim.

1

## 1.    RIPENESS

2        Regarding Defendants' ripeness argument, generally there are two prongs to a

3   ripeness inquiry, including the fitness of the issue for judicial decision, and the hardship to

4   the parties.  See Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967).

5        Defendants argue that Plaintiffs' ERISA claims are unripe because they are derivative

6   of, and entirely dependent upon, Plaintiffs' FLSA claim, which Plaintiffs have yet to

7   establish.  In support of their position, Defendants cite Texas v. United States, 523 U.S. 296,

8   300 (1998), which held that a claim is not ripe for adjudication if it rests upon contingent

9   future events.  However, in Texas the Court ruled on the issue of whether a Voting Rights

10  Act's pre-clearance provisions could apply to allow sanctions under the Texas Education

11  Code against a local school district if it were to fail to meet state-mandated educational

12  achievement levels.  Id.  The Court found the issue unripe for adjudication because the Court

13  had "no idea whether or when such [a sanction] will be ordered."  Id.  Texas is

14  distinguishable because, here, the asserted events giving rise to Plaintiffs' ERISA claims

15  already have allegedly occurred and the only delay in the Court's ability to consider

16  Plaintiffs' ERISA claims is that it must first rule on Plaintiffs' FLSA claim.

17       Plaintiffs, on the other hand, contend that courts routinely hold that ERISA claims are

18  ripe and fit for review, even when dependent on FLSA claims.  In support of their position,

19  Plaintiffs cite In re Farmers Ins. Exchange Claims Representatives' Overtime Pay Litigation,

20  2005 WL 1972565 (D. Or. Aug. 15, 2005) (stating, "I will hold the two ERISA claims in

21  abeyance and defer any further activity on the claims (including class certification, discovery,

22  summary judgment), until I rule on defendants' liability for overtime pay"), and Rosenburg

23  v. IBM Corp., 2006 WL 1627108 (N.D. Cal. June 12, 2006).

24       In In re Farmers Ins. Exchange, the court denied the defendants' motion to dismiss the

25  ERISA claims, suggesting that the ERISA claims be deferred until after a ruling on the merits

26  of the overtime liability claims.  Id. at * 5.  In Rosenberg the court found plaintiffs' ERISA

27  claims dependent on their FLSA claims but that the dependence of the ERISA claims did not

28

- 26 -

render plaintiffs' claims unripe.  Rosenberg, 2006 WL 1627108 at *8-9.  The court denied the defendant's motion that the ERISA claims were unripe stating that the plaintiffs' ERISA claims were for equitable relief and not for damages that have not yet occurred.  Id.

Defendants attempt to distinguish In re Farmers and Rosenberg to no avail. Defendants contend that In re Farmers does not apply here because the defendants did not raise a ripeness argument in their motion to dismiss.  However, regardless of the argument set forth in the motion, the court deferred consideration of the ERISA claims pending a ruling on the merits of the FLSA claim.  Defendants distinguish Rosenberg by asserting that plaintiffs' ERISA claims there were only for equitable relief and not damages.  The Court does not find this distinction merits dismissal of Plaintiffs' ERISA claims here.  Plaintiffs ERISA claims are based on damages alleged to have already occurred and not on speculation of future injury.  Therefore, the Court is not persuaded by Defendants' ripeness argument.

## 2.   EXHAUSTION

Defendants argue that Plaintiffs' Section 1132(a)(1)(B) ERISA claim fails for failure to exhaust administrative remedies.  In opposition, Plaintiffs assert that they were not required to exhaust administrative remedies because doing so would have been futile.  Thus, Plaintiffs contend, they may proceed under ERISA's "catch-all" provision, 29 U.S.C. § 1132(a)(3).[4]          A beneficiary seeking a determination of rights or benefits under a plan must first exhaust the administrative remedies provided by the plan.  Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980).  A district court has discretion to waive the exhaustion requirement, Southeast Alaska Conservation Council v. Watson, 697 F.2d 1305, 1309 (9th Cir. 1983), and should do so when exhaustion would be futile.  Amato, 618 F.2d at 568.

---

[4]  Contrary to Defendants' argument that Plaintiffs have asked the Court to "excuse their mistake" as to their lack of exhaustion, which is required by 29 U.S.C. § 1132(a)(1)(B), Plaintiffs Complaint asserts the ERISA claims under the ERISA catchall provision, 29 U.S.C. § 1132(a)(3), which is used when exhaustion would be futile.

The ERISA plan in question compensates employees for hours worked as recorded by the Corporate Defendants.  Plaintiffs assert that the Corporate Defendants' failed to properly account and pay employees for hours they worked, which has resulted in inaccurate payroll records from which credits under the Plan are derived.  Plaintiffs have based their ERISA claims on the Corporate Defendants' alleged failure to properly account and credit Plaintiffs for hours worked, therefore, it would be futile to exhaust administrative duties with the Plan because the Plan has not received adequate accounting from the Corporate Defendants.  The Court agrees.  It would be futile for Plaintiffs to exhaust administrative remedies with the Plan when, Plaintiffs allege, the Plan has not been provided a correct record of Plaintiffs hours.  See  Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1416 n.1 (9th Cir. 1991) (finding plaintiff not required to take steps to exhaust administrative remedies for ERISA claims when such steps would be futile).  Accordingly, the Court is not persuaded by Defendants' exhaustion argument.

### 3.     ERISA RECORD KEEPING PROVISION

Next, Defendants assert that Plaintiffs' record keeping claim fails because the ERISA record-keeping provision does not provide a private cause of action.  In response, Plaintiffs cite Farmers, 2005 WL 1972565 at *3 (citations omitted), to assert that ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(3), provides plan participants the right to seek civil remedy for any violation of ERISA, including record-keeping violations.  As pointed out in Farmers, the catchall provision of 29 U.S.C. § 1132(a)(3) provides in relevant part that

A civil action may be brought -

* * *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).

1    "Thus, Section 1132(a)(3) confers on plan participants the right to bring suit to enjoin

2    "any" violation of "this title." "This title" is Title I, which encompasses 29 U.S.C. §§ 1001

3    through 1191, including the record-keeping requirements of § 1059(a)." Farmers, 2005 WL

4    1972565 at * 3.  Accordingly, Defendants' argument as to Plaintiffs' record-keeping claim

5    in not compelling; Defendants' Motion to Dismiss Claim II is denied.  Nevertheless, the

6    Court will hold in abeyance Plaintiffs' record-keeping claim pending the outcome of

7    Plaintiffs' FLSA claim.

8                    **4.      DEFENDANTS' DUTY**

9        Finally, Defendants argue that Plaintiffs' breach of fiduciary duty claim fails because

10   Plaintiffs have not first established that Defendants had a duty to credit Plaintiffs' ERISA

11   plans for hours Plaintiffs have worked.  Essentially, it appears that Defendants assert that

12   ERISA does not govern their decisions about how to administer payroll and that ERISA's

13   fiduciary duties apply only to a company's actions with respect to its employee benefit plan,

14   and not its roll as an employer.

15       In contrast, Plaintiffs contend that Defendants had a fiduciary duty under ERISA to

16   ensure that Plaintiffs were paid in accordance with the FLSA but that this analysis is

17   premature and inappropriate on a motion to dismiss because discovery is necessary to

18   determine the extent of Defendants' fiduciary duty.[5]

19       In support of their position, Defendants cite Ballaris v. Wacker Siltronic Corp., 2002

20   WL 926272 (D.Or. February 7, 2002), and Veliz v. Cintas Corp., 2003 WL 23857822 (N.D.

21   Cal. November 4, 2003).  In Ballaris the court found that the employer's decision concerning

22   whether to pay wages for time employees spent preparing to work had "only an extremely

23   indirect connection to the administration of the ERISA plan" and, therefore, did not give rise

24   to a fiduciary duty under the plan.  Ballaris , 2002 WL 926272 at *2.  In Veliz the court

25

26       [5] As stated above, Plaintiffs assert that the Corporate Defendants' failed to properly
27   account and pay employees for hours they worked, which has resulted in inaccurate payroll
     records from which credits under the Plan are derived.

28

1   dismissed plaintiffs' breach of fiduciary duty claim under ERISA, finding the decision of

2   whether to characterize plaintiffs as non-hourly employees, rather than hourly employees,

3   and thereby not keep record of plaintiffs' hours worked was a business decision and does not

4   equate to a breach of fiduciary duty.  Id. at *5.

5        Under ERISA, crediting hours is a fiduciary function, independent of the payment of

6   wages, necessary to determine participants' participation, vesting and accrual of rights. See,

7   e.g., Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (distinguishing between fiduciary

8   and settlor functions). As such, it is subject to ERISA's strict fiduciary standards. See id.

9   Moreover, Plaintiffs have asserted this claim against the Plan and the alleged Plan

10  Administrator.  The Court finds that Plaintiffs have asserted sufficient facts to overcome a

11  Rule 12(b)(6) motion to dismiss their ERISA breach of fiduciary duty claim.  Accordingly,

12  Defendants' Motion to Dismiss Count III is denied.  Nevertheless, the Court will hold in

13  abeyance Plaintiffs' breach of fiduciary duty claim pending the outcome of Plaintiffs' FLSA

14  claim.

15       **D.   RICO**

16       Plaintiffs allege that Defendants engaged in a pattern of mail fraud, whereby every

17  time Defendants mailed a paycheck to Plaintiffs, Defendants "mislead Plaintiffs about the

18  amount of wages to which they were entitled, as well as their status and rights under the

19  FLSA."  Compl. at ¶ 257.

20       Defendants argue that Plaintiffs RICO claim is unripe because Plaintiffs must first

21  establish that they were entitled to wages or overtime under FLSA for which they have not

22  been compensated.  Similar to Plaintiffs' ERISA claims above, the alleged events possibly

23  giving rise to Plaintiffs' RICO claim already have allegedly occurred and the only delay in

24  the Court's ability to consider Plaintiffs' RICO claims is that it must first rule on Plaintiffs'

25  FLSA claim.  Therefore, the Court is not persuaded by Defendants' ripeness argument here.

26       Citing Miller v. Yokohama Tire Corp., 358 F.3d 616, 621, (9th Cir. 2004), Defendants

27  also argue that Plaintiffs fail to state a claim under RICO arguing that RICO claims cannot

28

be predicated on alleged violations of wage and hour laws.  Plaintiffs point out in their Response, that <u>Miller</u> is a state wage and hour case (that did not allege FLSA violations) in which the court dismissed plaintiffs RICO claims because they were based on a misrepresentation of law (regarding plaintiff's legal status as an exempt employee), and not on a misrepresentation of fact.  <u>Id.</u>  In Reply, Defendants contend that the RICO claim in the instant case is also based on misrepresentations of law.  However, the dispute here is not over a legal question of whether Plaintiffs should be categorized as hourly or non-hourly employees.  Rather, the dispute is over how much pay these hourly-employees should have received.  This is a question of fact.  Thus, the issue in <u>Miller</u> is distinguishable from the issue here.

In support of their RICO claim Plaintiffs cite <u>Choimbol v. Fairfield Resorts, Inc.</u>, 428 F.Supp. 2d 437, 443 (E.D.Va. 2006), in which the court upheld similar allegations that employees' paychecks contained actionable fraudulent misrepresentations, which were sufficient to sustain plaintiffs RICO claim.  Defendants do not distinguish <u>Choimbol</u> in their briefing. During oral argument Defendants attempt to distinguish <u>Choimbol</u> by claiming that in <u>Choimbol</u> the RICO claim was predicated on actionable fraud whereas, here, Defendants contend, the RICO claim is predicated on success on the FLSA claim. Defendants again point the Court to <u>Miller</u>,358 F.3d at 621.  However, the Court has already determined that the issue in <u>Miller</u> is distinguishable from the issue here.

A *prima facie* RICO case requires the following: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.  <u>Miller</u>, 358 F.3d at 620.  Plaintiffs have alleged that every time Defendants mailed Plaintiffs a paycheck, Defendants "mislead Plaintiffs about the amount of wages to which they were entitled, as well as their status and rights under the FLSA." Compl. at ¶ 257.  This assertion meets the requirements for a *prima*

1    *facie* RICO case, as Plaintiffs have alleged conduct (mailing paychecks), of an enterprise[6]

2    (Defendants-businesses), through a pattern (continually mailing incorrect paychecks) of

3    racketeering activity (denying Plaintiffs' pay due them).  Plaintiffs have asserted a *prima*

4    *facie* case of RICO sufficient to overcome a Rule 12(b)(6) motion to dismiss.  Accordingly,

5    Defendants' Motion to Dismiss Plaintiffs' RICO claim is denied.  The Court will, however,

6    hold in abeyance Plaintiffs' RICO claim pending the outcome of Plaintiffs' FLSA claim.

7    **III.     RULE 23**

8         Defendants have asserted that Plaintiffs' Rule 23 "opt-out" certification allegations,

9    which includes Plaintiffs' ERISA and RICO claims, should be struck.  Defendants contend

10   that Plaintiffs' ERISA and RICO claims cannot be maintained as Rule 23 "opt-out" claims

11   since they are dependent on Plaintiffs' underlying FLSA claims, which are subject to the

12   "opt-in" mechanism of 29 U.S.C. § 216(b).

13        The FLSA provides for participation in the collective action on an opt-in basis.

14   See 29 U.S.C. § 216(b) (An employee cannot be a plaintiff "unless he gives his consent in

15   writing to become such a party and such consent is filed in the court.").  By contrast, under

16   Rule 23, Fed.R.Civ.P., each member of the class is bound by the court's judgment unless the

17   class member requests exclusion from the class.  Fed.R.Civ.P. 23(c)(2).

18        Citing Silverman v. Smithkline Beecham Corp., 2007 WL 3072274 (C.D. Cal. Oct.

19   16, 2007); Ellison v. Autozone, Inc, 2007 WL 2701923 (N.D. Cal. Sept. 13, 2007), Plaintiffs

20   assert that their FLSA "opt-in" actions are compatible with Rule 23 "opt-out" class actions.

21   Plaintiffs also assert that determining the scope of a class action is a case management issue

22   that is premature at this stage of the litigation.  Silverman, 2007 WL 3072274 at *2.

23        Defendants   distinguish   these   cases   by   asserting   that   both   Silverman   and

24   Ellison involved FLSA and state law claims, not FLSA-dependent ERISA and RICO claims,

25   _____

26        [6] An enterprise can include a "group of persons associated together for a common
     purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583
27   (1981).

28                                            - 32 -

as are pled here.  Because the ERISA and RICO claims are dependent on the underlying "opt-in" FLSA claims,  Defendants contend, the proposed "opt-out" classes are defectively overbroad and unworkable.

The only case in which a court has addressed the compatibility between opt-in FLSA and opt-out ERISA claims is <u>Greer v. Challenge Financial Investors Corp.</u>, 2005 WL 3502270 (D. Kan. Dec. 22, 2005).  Though <u>Greer</u> is distinguishable in that the ERISA claims the plaintiffs sought to add to their existing FLSA collective action claims were not contingent upon a finding of liability under the FLSA, the court there rejected defendants' argument that the ERISA Rule 23 class action claims were irreconcilable with the FLSA opt-in claims.  <u>Id.</u> at *3.  Here, each of the FLSA, ERISA, and RICO claims depend on many of the same facts.  The Court is, however, mindful that if it does not allow Plaintiffs' ERISA and RICO claims to proceed in the instant litigation, these claims may later be barred by collateral estoppel or the statute of limitations.

During oral argument Plaintiffs indicated that the opt-out classes for the ERISA and RICO claims will be limited to those Plaintiffs who opted in to the FLSA claim.  The Court will hold in abeyance Plaintiffs ERISA and RICO claims pending the outcome of Plaintiffs' FLSA claim.  If Plaintiffs succeed on their FLSA claim, the Court will allow Plaintiffs to proceed at that time with their ERISA and RICO claims on a Rule 23 class-action basis, provided the class is narrowly defined only as to those who opted-in to the FLSA claim.

## IV.    PLAINTIFFS' CLAIM AGAINST THE PLAN

Defendants assert that Plaintiffs have failed to allege a claim against the Plan because Plaintiffs "failed to allege any facts that could establish liability" with respect to the Plan. Motion to Dismiss (Doc. 72) at p. 18.  Defendants assert that Plaintiffs never allege that the Plan itself did anything or had any responsibility but merely lump the Plan with the other Defendants as to all four causes of action.

1    In response, Plaintiffs do not dispute that they have not sufficiently asserted a claim

2    against the Plan for violations of the FLSA or RICO.  Plaintiffs do contend that they have

3    sufficiently asserted an ERISA claim against the Plan.

4    ERISA provides that an employee benefit plan may be sued under ERISA. 29 U.S.C.

5    § 1132(d)(1).  Here, in their Complaint, Plaintiffs identify the statute under which they have

6    asserted their ERISA claims, they state that the claims are brought "for defendants' failure

7    to maintain accurage payroll records and credit plaintiffs' 401(k) plans with their on-reduced

8    weekly wages and correct overtime compensation."  Compl. ¶ 1.  Plaintiffs also allege that

9    Defendants, including the Plan, failed to make and keep accurate records of all Plaintiffs'

10   time worked and, thus, those records are insufficient to determine benefits.  Compl. ¶¶ 1,

11   249-51.  Plaintiffs further allege that Defendants breached their fiduciary duties under

12   ERISA by failing to credit or even investigate crediting overtime pay as compensation used

13   to determine benefits.  Compl. ¶ 251.  In considering the allegations as set forth in their

14   Complaint, it appears that Plaintiffs have meet the <u>Twombly</u> standard for pleading an ERISA

15   claim against the Plan, and it is not clear that no relief could be granted under any set of facts

16   that could be proved consistent with the allegations.  See <u>Falkowski</u>, 309 F.3d at 1132.

17   Accordingly, Defendants' Motion to Dismiss the Plan is denied as to Plaintiffs' ERISA

18   claims.

19   **V.   EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS**

20   Plaintiffs move for equitable tolling of the statute of limitations.  To put Plaintiffs'

21   Motion in context, a brief procedural background is in order.  On January 15, 2008, Plaintiffs

22   filed the instant Class Action Complaint on behalf of themselves and all others similarly

23   situated as a collective action under the FLSA, ERISA, and RICO.  On January 16, 2008,

24   Plaintiffs filed a motion for expedited collective action notification (Doc. 3) and a Motion

25   for expedited briefing on their motion for collective action notification (Doc. 5).  On January

26   29, 2008, Defendants Eastern and SCI Houston filed a motion to stay plaintiffs' motion for

27   expedited collective action notification (Doc. 46), and a response in opposition to plaintiffs'

28

1    motion to expedite consideration of defendants' motion to expedite briefing on their motion

2    for collective action notification (Doc. 49).

3         On January 31, 2008, the Court issued a brief Order (Doc. 49), which denied without

4    prejudice Plaintiffs' motion for expedited collective action notification and directed that

5    Plaintiffs may re-file a motion for class notification after the Court rules on Defendants'

6    then-anticipated motion to dismiss.  The Order also denied Plaintiffs' motion for expedited

7    briefing on their motion for collective action notification, denied Defendants' motion to stay,

8    granted Defendants' motion for expedited consideration of Defendants' motion to stay and

9    Ordered Defendants to file their motion to dismiss by February 8, 2008, directing the parties

10   to brief the motion to dismiss on an expedited basis.

11        On February 8, 2008, all Defendants filed motions to dismiss (Docs. 88, 89, 90).

12   These motions are fully briefed.  On May 5, 2008, Plaintiffs filed the instant Motion and

13   Memorandum of Points and Authorities in Support of their Motion for An Equitable Toll of

14   the Statute of Limitations (Doc. 174).  This Motion also is fully briefed.

15        In their Motion, Plaintiffs assert that equitable tolling is appropriate to prevent the

16   expiration of Plaintiffs' claims because of delays in the case not due to the fault of the

17   Plaintiffs.   Defendants oppose Plaintiffs' Motion for Equitable Tolling asserting that

18   equitable tolling is only warranted in two situations, namely: (1) where the plaintiffs actively

19   pursued their legal remedies by filing defective pleadings within the statutory period; or (2)

20   where the defendant's misconduct caused plaintiffs to miss the deadline.

21        The commencement of a lawsuit does not act to toll the statute of limitations under

22   the FLSA for putative class members.   Instead, the statute of limitations continues to run

23   until putative class members file consent forms.  See 29 U.S.C. § 256; see also Grayson v.

24   K-Mart Corp., 79 F.3d 1086, 1106 (11th Cir. 1996), cert. denied, Helton v. K-Mart, 519 U.S.

25   987 (1996).  Courts have equitably tolled the statute of limitations in a FLSA action when

26   doing so is in the interest of justice.  See, e.g., Partlow v. Jewish Orphans' Home of Southern

27   Cal., Inc., 645 F.2d 757, 760-61 (9th Cir. 1981) (equitable tolling proper where plaintiffs

28

1  were without fault and "practical effect of not tolling the statute would be to bar forever any

2  claim" the employees had against defendant), abrogated on other grounds by

3  Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989);

4  see also Beauperthuy v. 24 Hour Fitness USA, Inc., 2007 WL 707475 at *8 (N.D.Cal. Mar.

5  6, 2007) (equitably tolling FLSA statute of limitations because of factors outside plaintiffs'

6  control, including litigation, arbitration and settlement of related action).

7  　　　The Court finds it appropriate in the interest of justice to toll the statute of limitations

8  here.   Defendants here will not be prejudiced by an equitable toll.   See, e.g., Baden-

9  Winterwood, 484 F.Supp. 2d 822, 828 (S.D. Oh. 2007) (defendant was fully aware of its

10  scope of potential liability on the date the suit was filed).   If not tolled, the statute of

11  limitations could act to deprive consenting employees of their right of action.   Partlow, 645

12  F.2d 761; see also Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)

13  (holding that "the time during which a party is prevented from obtaining legal relief is not

14  counted for purposes of statutes of limitations.").   Here, the Court has not made a

15  determination as to Plaintiffs' collective action notification pending its determination of

16  Defendants' Motions to Dismiss.   As the Supreme Court noted in Hoffman-La Roche Inc.

17  v. Sperling, 493 U.S. 165, 170 (1989), the inherent benefits of the collective action "will

18  disappear" if plaintiffs are not notified of the suit before their statute of limitations expires.

19  Similarly, here, without tolling the statute of limitations, Plaintiffs will have lost the time

20  between the filing of the Motions to Dismiss on February 8, 2008 until the filing of the

21  instant Motion that they could have used to notify potential class members.   Accordingly,

22  Plaintiffs' Motion for an Equitable Toll of the Statute of Limitations is granted.   Plaintiffs'

23  statute of limitations is hereby tolled from the date Defendants filed their Motions to Dismiss,

24  February 8, 2008, until the date Plaintiffs re-file their motion for expedited collective action

25  notification.

26  ///

27  ///

28  　　　　　　　　　　　　　　　　　　　　　- 36 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** granting SCI Eastern Market Support Center and SCI Houston Market Support Center's Motion to Dismiss (Doc. 55).  SCI Eastern and SCI Houston are hereby dismissed from these proceedings.

**IT IS FURTHER ORDERED** directing additional discovery as to the personal jurisdiction of Defendants Thomas Ryan and Julie Douglas.  The parties are directed to file any briefing on this issue after they have had the opportunity to conduct such discovery (Doc. 54).

**IT IS FURTHER ORDERED** denying the Motion to Dismiss as to Defendants Jane D. Jones, Gwen Petteway, Thomas Ryan, Curtis Briggs (Doc. 54).

**IT IS FURTHER ORDERED** denying Defendants' Motion to Dismiss Plaintiffs' FLSA claim (Doc. 72).

**IT IS FURTHER ORDERED** denying Defendants' Motion to Dismiss Plaintiffs' ERISA claims (Doc. 72).  The Court will hold these claims in abeyance pending the outcome of Plaintiffs' FLSA claim.

**IT IS FURTHER ORDERED** denying Defendants' Motion to Dismiss Plaintiffs' RICO claim (Doc. 72).  The Court will hold this claim in abeyance pending the outcome of Plaintiffs' FLSA claim.

**IT IS FURTHER ORDERED** denying Defendants' Motion to Strike the Rule 23 Allegations as to the ERISA and RICO claims but directing that no action be taken as to the Rule 23 class until after the FLSA claim is decided (Doc. 72).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendants' Motion to Dismiss the Plan (Doc. 72).  Plaintiffs' FLSA and RICO claims are dismissed as to the Plan.  Plaintiffs' ERISA claims may proceed as to the Plan.

/ / /

1    **IT IS FURTHER ORDERED** granting Plaintiffs' Motion for an Equitable Toll of

2    the Statute of Limitations (Doc. 174).  Plaintiffs' statute of limitations is, hereby, tolled from

3    the date Defendants filed their Motions to Dismiss, February 8, 2008, until the date Plaintiffs

4    re-file their motion for expedited collective action notification.

5    DATED this 29th day of September, 2008.

_____

Mary H. Murguia
United States District Judge