Lonnie J. Williams, Jr. (#5966)
Benjamin J. Naylor (#23968)
QUARLES & BRADY LLP
Firm State Bar No. 00443100
Two North Central Avenue
Phoenix AZ 85004
(620) 229-5200
Fax: (620) 229-5690
lwilliams@quarles.com
bnaylor@quarles.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Stickle; Eleanor Riggio; Frank Acuna' Joseph Biernacki; Gordon Farmer; Rhealyn Holland; Richard Lamasters; Kenneth Allen, et al., on behalf of themselves and all employees similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc.; SCI Eastern Market Support Center, L.P.; SCI Houston Market Support Center, L.P.; SCI Funeral and Cemetery Purchasing Cooperative, Inc.; Service Corporation International; Jane D. Jones; Gwen Petteway; Thomas Ryan; Curtis Briggs; The SCI 401k Retirement Savings Plan; and Julie Douglas. <br><br> Defendants. | NO. CV08-083-PHX-MHM <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED COLLECTIVE ACTION NOTIFICATION; _AND_ MOTION TO STRIKE** <br><br> (Oral Argument Requested) |

Defendants submit this Opposition to Plaintiffs' Motion for Expedited Collective Action Notification and Motion to Strike, which are supported by the Memorandum of Points and Authorities, the attached exhibits, and the Court's entire record herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **SUMMARY AND FACTUAL BACKGROUND**

  A.    **Summary**

Defendants SCI Western Market Support Center, L.P., et al. (collectively, "Defendants") oppose Plaintiffs' Motion for Expedited Collective Action Notification ("Motion for Notice") on three grounds.  First, Plaintiffs have failed to show that the proposed lead plaintiffs and the proposed collective action group, to the extent that group can be defined, are "similarly situated" for purposes of 29 U.S.C. § 216(b).  Accordingly, notice would be improper.  Next, Plaintiffs' proposed class definition is overbroad and amorphous, such that it is impossible to identify which employees would receive notice, and which employees would not.  Finally, Plaintiffs' proposed form of notice and proposed methods of notification are improper and overly burdensome.  For these reasons, collective action notification is improper, and Plaintiffs' Motion for Notice should be denied.

Furthermore, Defendants move to strike portions of Plaintiffs' affirmations (Dkt. 244-4, Exh. C-K), which were offered in support of Plaintiffs' Motion for Notice, on the grounds that they lack foundation.  The Court should also strike the Affirmation of Stephanie Brown (Dkt. 244-4, Exh. H) on the grounds that Brown's employment ended in 2004 before the applicable statute of limitations period.  (*Id.*).

  B.    **Procedural History**

Plaintiffs filed this lawsuit on January 15, 2008 alleging that certain of Defendants' policies and procedures violate the Fair Labor Standards Act ("FLSA").  [Dkt. 1].  The next day, Plaintiffs filed their first motion for expedited collective action notification.  [Dkt. 3].  In that motion, Plaintiffs alleged that Defendants maintained an unlawful policy (the "On-Call Policy"), which deprived employees of pay for work performed outside of the workday and off-site from the funeral home.  [Dkt. 3, p. 4:9-12].  Plaintiffs sought to send notice of the lawsuit to all employees of Defendants at all

1    of locations who were subject to the On-Call Policy.  [Dkt. 3, p. 1:19-20].  Plaintiffs'

2    motion did not allege that Defendants maintained any other unlawful policy or practice,

3    and Plaintiffs did not seek to send notice to any other subclass of employees.

4         The Court denied Plaintiffs' first motion for expedited collective action

5    notification regarding the alleged On-Call Policy in an Order dated January 31, 2008.

6    [Dkt. 49].  On September 30, 2008, the Court ruled on Defendants' motions to dismiss,

7    [Dkt. 207] yet Plaintiffs did not re-file their motion for collective action notification.

8         Almost two months later, Plaintiffs sought leave to file multiple motions for

9    collective action notification.    The Court denied Plaintiffs' request and ordered Plaintiffs

10   to file a "single motion for notice" within 35 days of that hearing.  Pursuant to this

11   Court's Order, Plaintiffs filed their Motion for Notice [Dkt. 243] on December 23, 2008.

12        Plaintiffs' Motion for Notice seeks to send notice to seven (7) different subclasses

13   of employees who "could have been permitted to work" pursuant to Defendants'

14   Community Work Policy, Pre-Needs Appointment Policy, Training Compensation

15   Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy,

16   Unrecorded Work Time Policy, and Failure to Include All Remuneration in Overtime

17   Calculation Policy.[1]  [Dkt. 243, pp. 2, 5-13].  Importantly, Plaintiffs do not move for

18   notice as to Defendants' alleged "On-Call Policy" that they raised in their first motion for

19   expedited collective action notification, which was denied, and is therefore no longer

20   before the Court.

21        C.    **Factual Background**

22        SCI is a holding company that has no employees.  [*See* Marshall Declaration

23   ("Marshall Decl."), Appendix B to the Complaint [Dkt.1] at ¶ 3] .  It is, in effect, nothing

24   more than a stockholder in various subsidiary companies engaged in the funeral industry.

25

26   _____

[1] Defendants are concerned that Plaintiffs will attempt to broaden their request in their Reply.  This cannot be allowed.  *Davis v. Westgate*, 2009 WL 102735 (D. Nev. 1/12/2009).

1    Among these subsidiaries are certain state-specific entities (the "Employers") that own

2    and operate funeral homes, mortuaries, crematories and cemeteries and that are the actual

3    employers of the Plaintiffs in this case.  [*See, e.g.*, Marshall Decl. at ¶ 8 ("James Stickle

4    was employed by SCI Arizona Funeral Services, Inc."; Employee List at Exh. C of

5    Appendix D to Plaintiffs' Compl. ("Employee List")].  Unlike the Employers, the

6    Defendants are not in the business of providing funeral, cremation, or mortuary services,

7    and, as such, they employ no funeral directors, embalmers, or crematory managers.

8    Rather, the Defendants are under contract to provide human resources, counseling and

9    administrative support services to the Employers that actually employed the Plaintiffs.

10   [Marshall Decl. ¶ 4].

11          Plaintiffs seek to conditionally certify a class of "all hourly employees of SCI at

12   all of its locations" who "*could* have been" subject to the seven aforementioned policies.

13   [Dkt. 243, 2:5-6] (emphasis added).  In order to understand the enormous scope of

14   Plaintiffs' proposed class, and the dearth of evidence suggesting a similarity of claims

15   among those potential class members, certain background information is necessary.

16   There are more than forty (40)  Employers who employ plaintiff and other potential

17   members of the putative class.  [*See* Declaration of Liana Jensen, attached hereto as

18   Exhibit 1, ¶ 5].  These Employers are located in 39 different states, and the District of

19   Columbia.  *Id*.  Together, the Employers have over 11,000 hourly workers.  *Id*. at ¶ 4.

20   Those employees perform a variety of job in more than 500 different positions.  Those

21   positions range from Grave Digger to Location Manager.  *Id*. at ¶ 7.  Therefore, when

22   Plaintiffs suggest that notice be sent to all hourly employees who could have been subject

23   to the allegedly unlawful policies, that class could reach <u>over 11,000 people</u>.  *Id*. at ¶¶ 4,

24   7.

25          In support of their request to send notice to more than 11,000 hourly employees

26   occupying more than 500 different positions in more than 39 states, Plaintiffs submit

1    only eight (8) affirmations[2] from eight (8) hourly employees, working for 16 different

2    funeral homes located in six (6) different states (Arizona, Connecticut, Florida, Georgia,

3    North Carolina, and Oregon).  [Dkt. 244-4, Exh. C-G, I-K].  During their employment,

4    the declarants held a combined six (6) different hourly positions (Funeral Director,

5    Embalmer, Location Manager, Family Services Counselor, Community Services

6    Counselor, and Family Services Supervisor).  *See Id.*  Plaintiffs' affirmations represent

7    merely a fraction of the putative class that they ask the Court to certify.

8          Because Plaintiffs have not produced any evidence of unlawful policies, and to

9    remove any doubt regarding the same, Defendants are submitting their own declarations

10   relating to the eight people who filed affirmations.  Those affirmations are collectively

11   attached as Exhibit 2.  For example, with respect to Mr. Sileo (Exhibit C to Plaintiffs'

12   Motion), the affirmation of John Roefaro, President of SCI Connecticut Funeral Services,

13   LLC (a non-party to this action) indicates that Mr. Sileo was employed from April 29,

14   1993 through February 1, 2005 (only 15 days within the relevant period of this lawsuit)

15   by SCI Connecticut as a funeral director.  Mr. Roefaro also states that at no time did SCI

16   Connecticut have a pre-needs policy or the other policies as generally alleged.  Mr.

17   Roefaro also establishes the fact that he was never directed by any of the Defendants to

18   institute the type of policies that are generally alleged.  Exhibit 2 contains affirmations

19   from officers, managers and presidents for each one of the eight declarants.

20          To put it another way, Plaintiffs have failed to provide evidence that the allegedly

21   violative policies existed at any other location, other than the place where eight

22   employees worked.  Plaintiffs have also failed to provide evidence that the alleged

23   policies affected employees holding the other 494 hourly positions.  Moreover, Plaintiffs'

---

[2] Plaintiffs' submit a total of nine affirmations.  However, Defendants move to strike, in its entirety, the Affirmation of Stephanie Brown [Dkt. 244-4, Exhibit H].  Brown admits that her employment terminated in 2004.  Assuming *arguendo* a willful violation of the FLSA, the statute of limitations is three years from the date the Complaint was filed, or January 15, 2005.  29 U.S.C. § 255(a).  Nothing in Brown's affirmation can relate to the time period at issue.  Because Brown was not employed during the violation period, her claims are barred.

affirmations represent only 0.0007 % of the class that they seek to certify.  Based upon this very limited evidence offered by Plaintiffs in their single Motion for Notice, Defendants submit this opposition.

## II.   ARGUMENT

### A. Legal Standard for Analyzing Whether a Claim Brought under the FLSA Should be Permitted to Proceed As A Collective Action

A party may bring a collective action under the Fair Labor Standards Act ("FLSA") on behalf of other "similarly situated" employees.  See 29 U.S.C. § 216(b); *Hoffman-LA Roche v. Sperling*, 493 U.S. 165, 168-69 (1989); *Hutton v. Bank of America*, 2007 WL 5307976, *1 (D. Ariz. Mar. 31, 2007) (slip opinion).  The district court has the discretion to determine whether certification of a § 216(b) collective action is appropriate.  District courts in the Ninth Circuit generally follow a two-step approach for making that determination.  *See Hoffman-LA Roche*, 493 U.S. at 168-69; *Hutton*, 2007 WL 5307976, at *1 (citing *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see also Wood v. TriVita, Inc.*, CV-08-0765-PHX-SRB, *4 (D. Ariz. Jan. 22, 2009) (unpublished); *In re Allstate Ins. Co. Fair Labor Standards Litigation*, No. 2:03-md-01541-PGR, *2 (D. Ariz. Feb. 6, 2006) (unpublished).  Under the first step, Plaintiffs must demonstrate that members of the proposed class are "similarly situated" *before* notice should be issued to putative class members.  29 U.S.C. § 216(b); *Hutton*, supra; *Wertheim v. State of Arizona*, 1993 WL 603552, *1 (D. Ariz. Sept. 30, 1993) (unreported).

The term "similarly situated" is not defined by the FLSA or its regulations.  However, courts within this Circuit have determined - and Plaintiffs agree [Dkt. 243, p. 14:21-23][3] - that in order for the members of the proposed class to be similarly situated under Section 216(b), Plaintiffs must show "similarity among the individual situations"

---

[3] Both parties agree that legal standards in *Bonila v. Las Vegas Cigar Co.*, 61 F.Supp.2d 1129 (D.Nev. 1999) apply.

1    and "a factual nexus which binds the named plaintiffs and the potential class members

2    together as victims of a particular alleged policy or practice." *Bonilla v. Las Vegas Cigar*

3    *Co.*, 61 F. Supp. 2d 1129, 1138 n.6 (D. Nev. 1999); *see also Hinojos vs. The Home*

4    *Depot*, 2006 U.S. Dist. Lexis 95434, *5 (D. Nev. Dec. 1, 2006).  Based upon the case law

5    cited, the parties here are in agreement that Plaintiffs "cannot proceed in a collective

6    action if the action relates to other specific circumstances personal to the plaintiff rather

7    than any generally applicable policy or practice." *See Bonilla*, 61 F.Supp.2d at 1138 n.6

8    (cited by Plaintiffs, Dkt. 243, p. 14:15-16, 23-24); *see also Hinojos*, 2006 U.S. Dist.

9    Lexis 95434, *5 quoting *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946,

10   at *2 (E.D. La. Apr. 16, 1992) and *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D.

11   Colo. 1987).

12          Contrary to Plaintiffs' contention, conditional certification is not by any means

13   automatic, and it requires more than the bare allegations of the complaint.  *See Adams v.*

14   *School Board of Hanover County*, 2008 WL 5070454 (E.D. Va. Nov. 26, 2008).  Indeed,

15   as shown by recent decisions, the district courts within this Circuit have increasingly

16   applied a more rigorous test, and require plaintiffs to show some modest evidence,

17   beyond pure speculation, that the employer's alleged policy affected other employees.

18   *See generally Hinojos*, 2006 U.S. Dist. Lexis 95434; *Hutton*, 2007 WL 5307976; *Wood*,

19   CV-08-0765-PHX-SRB; *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL

20   102735 (D. Nev. Jan. 12, 2009).  Accordingly, Plaintiffs must present a factual nexus

21   between their situation and the situation of other current and former employees sufficient

22   to determine that they are similarly situated.  *Id*.  Plaintiffs have failed to demonstrate

23   that they are similarly situated to the class of persons they have identified.

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**B. Plaintiffs have not made a Sufficient Showing that there is a Class of Similarly Situated Plaintiffs for the Purpose of Conditional Certification of a Collective Action.**

1. Plaintiffs failed to submit evidence of a widespread discriminatory plan affecting all putative class members.

Plaintiffs allege that Defendants maintained national, company-wide policies that denied them proper compensation under the FLSA. [Dkt. 243, p. 12:9-12]. They seek to conditionally certify a class of "all hourly employees of SCI at all of its locations" who could have been subject to these policies. [Dkt. 243, 2:5-6] (emphasis added). The courts in this District require claimants to submit credible evidence of a centralized decision-making process, which affected all members of the proposed class in order to warrant conditional certification. *See Wertheim v. State of Arizona*, 1992 WL 566321, *3 (D. Ariz. Aug. 4, 1992). Here, Plaintiffs do not offer credible evidence of centralized decision-making process that affected all proposed class members. Rather, they offer unsupported allegations from eight employees that their individual managers did not pay them certain wages owed under the FLSA. *See* (Dkt. 244-4, Exh. C-G, I-K). Courts will deny conditional certification where, as here, the plaintiffs fail to make a proper evidentiary showing. *Wertheim*, 1992 WL 566321, *3 (denying conditional certification where plaintiffs failed to submit credible evidence of a centralized decision-making process that affected all members of the proposed class); *see also Wood*, CV-08-0765-PHX-SRB (denying conditional certification where plaintiffs failed to make proper evidentiary showing). Plaintiffs' request for conditional certification should be denied.

In support of their request to send notice to a class of more than 11,000 hourly employees occupying more than 500 different hourly positions in more than 39 states, (See Exhibit 1), Plaintiffs submit affirmations from eight hourly employees, working in 16 locations (SCI has over 1,000 different locations) located in six different states (Arizona, Connecticut, Florida, Georgia, North Carolina, and Oregon). (See Exhibit 2.

1    The declarants held a combined six different hourly positions (Funeral Director,

2    Embalmer, Location Manager, Family Services Counselor, Community Services

3    Counselor, and Family Services Supervisor).  As the diagram below indicates, Plaintiffs'

4    affirmations represent merely a fraction of the putative class.

5    **The Employers:**          11,000 employees [holding] 500 positions

6                                        ↓                        ↓

7    **Plaintiffs' Affirmations:**    8 declarants    [holding]     6 positions

8                                        ↓                        ↓

9                                **0.0007 %**                **0.012 %**

10         **Plaintiffs have failed to provide evidence that the allegedly violative policies**

11   **existed at 34 of the more than 40 Employers.  Plaintiffs have also failed to provide**

12   **evidence that the policies affected employees holding any of the 494 hourly positions**

13   **other than those held by the declarants.  Moreover, Plaintiffs' affirmations**

14   **represent only 0.0007 % of the class that they seek to certify.  Plaintiffs have not**

15   **made a proper evidentiary showing of a widespread discriminatory plan affecting**

16   **all putative class members.**  (Exhibit 1)

17         Courts in this District, as well as courts across the country, routinely deny

18   plaintiffs' requests for conditional certification based upon the same or even stronger

19   evidence of similarity of claims than that presented by Plaintiffs in this case.  *See Wood*

20   *v. TriVita, Inc.*, CV-08-0765-PHX-SRB, *7 (D. Ariz. Jan. 22, 2009) (unpublished);

21   *Wertheim v. State of Arizona*, 1992 WL 566321 (D. Ariz. Aug. 4, 1992); *Baum, et al. v.*

22   *Shoney's, Inc.*, 5 Wage&HourCas.2d 127, 1998 WL 968390 (M.D. Fla. Dec. 3, 1998);

23   *Bernard v. Household Int'l, Inc.*, 231 F.Supp.2d 433 (E.D. Va. 2002); *Harper v. Lovett's*

24   *Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999); *Sherrill v. Sutherland Global Serv., Inc.*,

25   487 F.Supp.2d 344, 350 (W.D.N.Y. 2007); *Davis v. Westgate Planet Hollywood Las*

26   *Vegas, LLC*, 2009 WL 102735 (D. Nev. Jan. 12, 2009); *England v. New Century*

1   *Financial Corp.*, 370 F.Supp.2d 504, 511 (M.D. La. 2005); *West v. Border Foods, Inc.*,

2   2006 WL 1892527, at *6 (D. Minn. July 10, 2006) (unpublished); *Flores v. Lifeway*

3   *Foods, Inc.*, 289 F.Supp.2d 1042, 1046 (N.D. Ill. 2003).

4           Specifically, courts will refuse to certify a class where the claimants offer only

5   limited evidence, which is representative of just a fraction of the putative class, like

6   Plaintiffs have offered here.  *See Baum v. Shoney's Inc.*, *supra*; *England v. New Century*

7   *Financial Corp.*, 370 F.Supp.2d 504, 511 (M.D. La. 2005) (evidence consisting of 232

8   declarations in a case where 485 plaintiffs had opted into the class was not sufficient to

9   prove a nationwide illegal policy, and conditional certification under FLSA was denied);

10  *West v. Border Foods, Inc.*, 2006 WL 1892527, at *6 (D. Minn. July 10, 2006)

11  (unpublished) (holding that affidavits from 2.5% of the potential class did not "support

12  the Plaintiffs' assertion of widespread violations resulting from a common policy or plan"

13  where allegation was that individual managers required employees to work off-the-

14  clock); and *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1046 (N.D. Ill. 2003)

15  (affidavits from "two out of fifty (four percent of Defendant's workforce) does not rise to

16  the level of a common policy or plan warranting conditional certification.").

17          In *Baum, et al. v. Shoney's, Inc.*, 5 Wage&HourCas.2d 127, 1998 WL 968390

18  (M.D. Fla. Dec. 3, 1998), the claimants alleged that their employer-restaurant chain

19  failed to pay hourly employees for all time worked.  Similar to Plaintiffs, the claimants

20  sought to include in their proposed class "all present and former employees of Shoney's

21  Inc. who were paid on an hourly basis," including employees from approximately 175

22  restaurants in 11 states.  *Id*. at 2.  In support of their motion for notice, the claimants

23  provided five (5) affidavits, which the court found were "almost identical to each other."

24  *Id*. at 3.  The affidavits were limited to employees who worked at Shoney's restaurants in

25  Orange County, Florida.  *Id*.  Just like Plaintiffs, the claimants in *Shoney's* did not

26  provide any affidavits or other evidence that employees in restaurants <u>outside of Orange</u>

County were similarly situated to them.  *Id*.  The court found that the claimants had not shown that potential class members, especially outside of Orange County, were together the victims of a single decision, policy, or plan, and conditional certification was denied. *Id*.

In *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735 (D. Nev. Jan. 12, 2009), decided just days ago, the District of Nevada denied conditional certification as to the claimants' proposed company-wide class.  The claimants alleged that the defendant-resort chain maintained a nationwide policy of violating the overtime pay and minimum wage requirements of the FLSA.  *Id*. at *1.  Claimants sought to certify a nationwide class of defendants' sales personnel, including all of defendants' 20 resorts in nine (9) different states.  *Id*. at *4.  Claimants offered declarations by employees who worked at defendants' resorts in Nevada, Florida and Tennessee only.  *Id*. at *4.  The claimants argued that the locations in these three states consisted of approximately 69% of defendants' sales people, and therefore the court should conclude that defendants have a nationwide policy of violating the overtime pay and minimum wage requirements of the FLSA.  *Id*. at *10.  The court disagreed, finding that "the declarations supporting the plaintiffs' motion [for notification] simply do not provide any factual evidence that defendants' timeshare sales personnel outside of Nevada, Florida, or Tennessee are similarly situated for purposes of circulation of notice of a collective action under § 216(b)."  *Id*. at *10.  Conditional certification as to the other states was denied.  *Id*.

In *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999), the claimants sought to send notice to a class of all hourly wage employees who worked at any of defendant's family-style restaurants in six (6) states the Southeast.  *Id*. at 362.  That proposed class would include eight (8) different hourly job categories.  *Id*., n.4. Claimants, however, only offered affidavits from employees in four (4) different hourly

job categories, and all of the declarants worked at the same restaurant in Dothan, Alabama.  *Id*. at 363.  The claimants alleged that, regardless of location, each of defendant's restaurants operates under centralized policies and procedures.  *Id* at 362.  The court disagreed, finding that claimants' evidence did not establish that the defendant had a corporate-wide unlawful pay policy.  *Id*. at 363.

The class of "hourly wage employees" that claimants sought to represent contained employees who worked at different restaurants, in different states, for different managers, and most likely in different working conditions.  *Id*. at 363.  Yet, claimants failed to make a showing that any employees outside of the Dothan restaurant were subjected to employment practices that potentially violated the FLSA.  *Id*.  The court held that it could not, "on the basis of the evidence presented, find these individuals to be 'similarly situated' to the named, individual Plaintiffs or allow even the conditional certification or provision of notice to such a huge, diverse class."  *Id*.  Similarly here, Plaintiffs allege that the more than 40 Employers operate under centralized policies and procedures.  Yet Plaintiffs have only offered affirmations from hourly employees in six job categories (out of over 500), who worked under different management, in different conditions, and for different employers than the other 11,000 hourly employees to whom they seek to send notice.  On the basis of this evidence, this Court must not allow conditional certification of such a huge, diverse class.

As Plaintiffs' point out, courts will grant conditional certification on a company-wide scale, however, the requisite showing of factual similarity of claims must be made.  In *Sherrill v. Sutherland Global Serv., Inc.*, 487 F.Supp.2d 344, 350 (W.D.N.Y. 2007), the claimants wanted to send notice of potential FLSA violations to all hourly employees at each of the defendant's 11 call centers.  Claimants submitted affidavits from telemarketing agents who worked at 10 of defendants 11 call centers.  *Id*. at 349.  Claimants also submitted copies of time records for some of the declarants as proof of a

1   potentially unlawful deduction. *Id*. at 350. The court found that this significant

2   evidentiary showing was sufficient to show that a common policy of potential FLSA

3   violations existed at all of defendants' locations with respect to *telemarketing agents*. *Id*.

4   However, the court refused to authorize notice to "all hourly employees at these

5   locations" because claimants' evidence did not sufficiently demonstrate that the

6   defendants policies and practices complained of affected hourly employees other than

7   telemarketing agents. *Id*. at 350. The court restricted notice to only hourly employees

8   who worked as telemarketing agents at any of defendants' call centers. *Id*. Here,

9   Plaintiffs request to send notice to employees occupying more than 500 hourly positions,

10  yet their affirmations only implicate six positions. It would be improper to certify notice

11  as to the 494 hourly positions regarding which Plaintiffs have offered no evidence to

12  show substantial similarly of claims, or any other evidence that those positions are

13  subject to the allegedly unlawful policies identified in the Complaint.

14          Finally, merely days ago, another district court in Arizona denied conditional

15  certification where the claimed failed to prove the requisite similarity of claims. In *Wood*

16  *v. TriVita, Inc.*, CV-08-0765-PHX-SRB, *7 (D. Ariz. Jan. 22, 2009) (unpublished), the

17  District of Arizona denied the plaintiffs' motion for conditional certification where the

18  plaintiff failed to show that she and the prospective opt-in plaintiffs were similarly

19  situated "with respect to their job requirements and with regard to their pay provisions."

20  *Id*. at *7. The court found that if the class members were not similarly situated, "then the

21  interest in judicial economy would not be advanced by allowing this suit to proceed as a

22  collective action," and conditional certification was denied. *Id*., at *8-9. Plaintiffs here

23  have failed to show that they are similarly situated to the other members of their

24  enormous putative class. Because they are not similarly situated, the interest in judicial

25  economy would not be advanced by allowing this suit to proceed as a collective action.

26  Plaintiffs' Motion for Notice must be denied.

2.  <u>The allegations in the affirmations, on their face, do not meet the "similarly situated" standard.</u>

The allegations in the affirmations, on their face, do not meet the similarly situated standard, and conditional certification should be denied.  Plaintiffs' affirmations, which are uniform in form and content, merely state that they <u>believe</u> that Defendants maintained company-wide unlawful policies, which affected employees other than themselves, but they do not offer any facts to support these conclusory allegations.  *See generally* Dkt. 244-4, Exh. C-G, I-K.

In *Bernard v. Household Int'l*, 231 F.Supp.2d 433, 435-36 (E.D. Va. 2002), the court denied conditional certification based upon an identically weak set of affidavits.  In that case the plaintiffs submitted affidavits alleging that employees outside of their respective offices were subject to the employers' unlawful wage policies.  *Id*.  They prefaced these class-wide allegations with phrases such as "it is my understanding" and "I believe that."  *Id*. There were no affidavits from employees outside of plaintiffs' own locations, and the plaintiffs did not make any specific allegations regarding practices in other offices - no names of employees or supervisors, and no indication that the problems alleged through first-hand knowledge in plaintiffs' own offices existed elsewhere.  *Id*. The court denied conditional certification, finding that "without more, this court can not find that the 'similarly situated' criteria is met."  *Id*.; *see also H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (affidavits stating that movants "*believed*" that other workers suffered similar discrimination under FLSA were insufficient to warrant conditional certification where they did not provide any names or other support for their allegations); *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999); *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006).  The same result is warranted here.

Just like the affidavits in *Bernard* and *Housden*, Plaintiffs' affirmations are based merely on their own individual "beliefs" about Defendants' alleged policies.  Without

1   exception, Plaintiffs' affirmations state: "I was aware that this [Meal Break Policy, *et al.*]

2   existed <u>and I believed</u> that this policy was a Company-wide policy." *Id.* (emphasis

3   added)  But Plaintiffs do not identify any other employees besides themselves who were

4   allegedly subject to these policies.  Instead, Plaintiffs make broad references to "other

5   employees" who suffered FLSA-related wrongs at the hands of "management." *See* Dkt.

6   244-4, Exh. 1 ¶ 34 ("I am also aware of other employees who did not record all of their

7   overtime hours because management required them not to.").  In order to meet their

8   burden, Plaintiffs affirmations must contain "substantial detailed allegations of class-

9   wide violations of the FLSA," which Plaintiffs' do not.  *Baum, et al. v. Shoney's, Inc.*, 5

10  Wage&HourCas.2d 127, 1998 WL 968390 (M.D. Fla. Dec. 3, 1998); *Khan v. Cougar*

11  *Stop, Inc.*, Civil Action No. H-06-2862 (S.D. Tex. 9-21-2007) (conclusory statements in

12  affidavit, without more, are insufficient to support conditional certification).

13  Accordingly, conditional certification should be denied.

14

15              **C.  <u>Plaintiffs' Affirmations Should be Stricken</u>**

16          In support of their Motion, Plaintiffs have submitted eight affirmations, (only one

17  by a named Plaintiff and seven from people who have opted into this action).[4]  The

18  affirmations contain nearly identical language.  Plaintiffs' affirmations generally assert

19  their name, job title, the location at which they worked.  Taken together, the Affirmations

20  identify seven subclasses of alleged violations.[5]  These Affirmations fail to meet the

21  basic requirements necessary to support the issue of conditional notice and should be

22  stricken.  The Court should strike the affirmations because (1) they are not based on

23  personal knowledge; (2) constitute or rely on hearsay; or (3) contain conclusory

24  _____

25  [4] See, Footnote 2.
    [5] The seven subclasses are: Community Work Policy, Pre-Needs Appointment Policy, Training Compensation
26  Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy,
    Failure to Include All Remuneration in Overtime Calculation Policy.  [Dkt. 243, p. 5-13].

1    allegations, speculations and unsupported personal beliefs.

2         The parties agree that the burden at this stage of the proceeding is light.  For that

3    reason, the modern trend is for courts to require that declarations filed in support of

4    conditional certification meet the same standard applicable to affidavits filed in support

5    of a motion for summary judgment.  *See* Rule 56(e), Fed.R.Civ.P.    *Sjoblom v. Charter*

6    *Comm., LLC*, 2007 WL 4560541, *10 (W.D. Wis. Dec. 19, 2007) (unreported).  (An

7    affiant [in a conditional certification proceeding] must testify about what he observed

8    himself and not speculate about what he thinks happened.),  *Id.* (*Payne v. Pauley*, 337

9    F.3d 767, 772 (7th Cir. 2003)).  *See e.g., Landsberg v. Acton Enterprises, Inc.*, 2006 WL

10   3742221, *4 (S.D. Ohio Dec. 15, 2006) (slip opinion); *Harrison*, 411 F. Supp. 2d at 865;

11   *Richards v. Computer Scis. Corp.*, 2004 WL 2211691 at *1 (D. Conn. Sept. 28, 2004);

12   *McElmurry v. U.S. Bank Nat'l Ass'n.*, 2004 WL 1675925, at *10 (D. Or. 2004); *Clark v.*

13   *Dollar Gen. Corp.*, 2001 WL 878887, at *2 (M.D. Tenn. May 23, 2001).

14        An example of the court's application of Rule 56(e) is *Harrison v. McDonald's*

15   *Corp.*, 411 F.Supp.2d 862 (S.D. Ohio 205).  There, the court, after adopting the two-tier

16   approach, analyzed whether plaintiffs had submitted sufficient evidence to establish that

17   the potential class members were similarly situated.  The *Harrison* court rejected

18   plaintiffs' affidavits and disregarded the hearsay and inadmissible evidence.  The court

19   specifically noted that given plaintiffs' ability to contact the vast number of punitive

20   class members that reliance on hearsay and other inadmissible evidence was

21   unacceptable.  In adopting this standard, the *Harrison* court also noted that the

22   inadmissible evidence was part of a very modest attempt at establishing that the plaintiffs

23   was similarly situated.  In that case, plaintiffs presented two affirmations out of the 300

24   potential punitive class members (.067%).  The court also, relying on *Floes v. Lifeway*

25   *Foods Inc.*, 289 F.Supp.2d 1042, 1046, (N.D. Ill. 2003), found that plaintiffs' evidence

26   was "not even a modest factual showing of a common policy of plan."  The same is true

in this case.

Similarly here, Plaintiffs' allegations such as: "I was aware," "I believe," and other statements about what other hourly employees said or did.  These allegations have no foundational basis other than the declarant's own belief, which is unsupported by fact. Similarly, allegations such as: "Because all of SCI's payroll came from a centralized location, I understood that this was the policy of the Company" and "Neither I nor other employees were ever compensated for such unrecorded hours" are conclusory, and also lack foundation.  Therefore, Defendants request an order striking the following portions of the affirmations:

> Exhibit  C ¶¶  5, 8, 9, 10, 12, 14, 16, 19, 21, 23, 25, 27, 28, 31, 33, 34, 35;
>
> Exhibit D ¶¶ 5, 7, 8, 10, 12, 13, 16, 17, 19, 22, 23, 24;
>
> Exhibit  E ¶¶ 5, 7, 8, 10, 11, 12, 15, 16, 17, 20, 22, 25, 26, 28; 34;
>
> Exhibit. F ¶¶ 5, 7, 8, 10, 11, 12, 15, 16, 17, 20, 23, 24, 25, 27, 28, 30, 31, 32;
>
> Exhibit G ¶¶ 5, 7, 8, 10, 11, 12, 15, 16, 17,  20, 21, 23, 24;
>
> Exhibit I ¶¶ 5, 7, 9, 10, 11, 12, 14, 17, 20, 23, 26, 28, 29, 31, 33, 36, 38, 39, 40;
>
> Exhibit J ¶¶ 5, 6, 7, 10, 12, 14, 15, 16, 18, 19, 20, 22, 24;
>
> Exhibit K ¶¶ 5, 7, 8, 11, 12, 13, 16, 17, 18, 21, 22, 23, 25, 26, 27, 29, 30, 31.

Defendants also move the Court to enter an order striking the Affirmation of Stephanie Brown.  [Dkt. 244-4, Ex. H].  Brown admits that her employment terminated in 2004. Assuming *arguendo* a willful violation of the FLSA, the statute of limitations is three years from the date the Complaint was filed, or January 15, 2005.  29 U.S.C. § 255(a). Accordingly, Brown was not employed during the violation period, and her claims are

1  barred.

2      If the Court grants Defendants Motion to Strike, Plaintiffs will effectively be left

3  with no evidence that Defendants' allegedly unlawful policies were company-wide

4  policies.  Plaintiffs' only evidence that these policies are company-wide are Plaintiffs'

5  own opinions and beliefs ("I believed that this policy was a Company-wide policy")

6  [Dkt. 244-4, Exh. C-G, I-K], which lack foundation and are subject to being stricken.

7  Without those statements, Plaintiffs' only evidence of the policies are the representations

8  allegedly made by Plaintiffs' managers to Plaintiffs and other employees at Plaintiffs'

9  individual location(s).  *See* Dkt. 244-4, Exh. E, ¶ 18 ("Sales Manager Phyllis Hershman

10  informed employees <u>at our location</u> that employees would not be paid for a full meal

11  break each day, regardless of the fact that most days employees either did not take a

12  lunch, or it was significantly interrupted.") (emphasis added).  It cannot be disputed that

13  this evidence, which does not include company-wide allegations, does not meet the

14  similarly-situated standard as a matter of law.

15      **D. <u>Plaintiffs' Proposed Class Definition is Unworkable</u>**

16      Plaintiffs' proposed class definition is unworkable because (1) it is overbroad, and

17  (2) it is too amorphous for recognition. *See Perez v. Metabolife Int'l, Inc*., 218 F.R.D.

18  262, (S.D. Fla. 2003) ("A court should deny class certification where the class definitions

19  are overly broad, amorphous, and vague, or where the number of individualized

20  determinations required to determine class membership becomes too administratively

21  difficult."); *see also Wertheim v. State of Arizona*, 1992 WL 566321, *3 (D. Ariz. Aug. 4,

22  1992) (denying conditional certification of FLSA action where proposed class was

23  overbroad).

24      1.  <u>Plaintiffs' Class Definition is Overbroad</u>.

25      Arizona courts will deny conditional certification where the claimants' proposed

26  class is overbroad.  *See Wertheim v. State of Arizona*, 1992 WL 566321, at *3; *see also*

Case 2:08-cv-00083-MHM   Document 258   Filed 01/29/09   Page 19 of 28

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) (finding claimants' proposed meal and rest period class definition was overbroad).  In *Wertheim*, the claimant held two positions, Latent Prints Examiner ("LPE") II and III, which were classified as exempt under the FLSA.  *Wertheim*, 1992 WL 566321, at *1.  Claimant complained that the positions had been misclassified as exempt, and that as a result he had been denied overtime pay and on-call pay in violation of the FLSA.  *Id.*  Despite the fact that claimant had only held two specific positions, he moved to conditionally certify a class of "all present or former employees of the State of Arizona, who at any time since March 10, 1989, worked overtime hours without receiving overtime pay and/or were not paid for time spent in restricted on-call status."  *Id.* (emphasis added).  The defendant objected to claimant's inclusion of all state employees in the proposed class on the basis that the class was overbroad.  Specifically, the defendant claimed that as a DPS employee, claimant's job titles were classified as exempt by a different entity than that which classified other employees of the State of Arizona.  *Id.* at 2.  Although claimant offered one conclusory affidavit alleging that the same entity did the classifications for all state employees, the court found that the claimant had failed to meet his burden, and his proposed class was overbroad.  *Id.* at 3.

Here, Plaintiffs request to send notice "to all hourly employees of SCI at all of its locations" who could have been subject to any of the allegedly illegal policies identified by Plaintiff.  [Dkt. 243, 2:5-6] (emphasis added).  Yet Plaintiffs' only evidence supporting the existence of these policies are their eight affirmations, which represent only a fraction of the putative class.  *See* Section II.C. *supra*.  Accordingly, thousands of employees across the country would receive notice, even though Plaintiffs have failed to offer one iota of evidence that those employees were subject to the allegedly unlawful policies that they have identified.  Plaintiffs' proposed class is, therefore, patently overbroad, and conditional certification should be denied.

-19-

2.  <u>Plaintiffs' Proposed Class is Too Amorphous for Recognition</u>.

A proposed class definition may not be amorphous, vague, or indeterminate and it must be administratively feasible to determine whether a given individual is a member of the class.  *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233 (W.D. Pa. 2001) (quoting *In re Tetracycline Cases*, 107 F.R.D. 719, 728 (W.D. Mo. 1985)).  Here, Plaintiffs request that "notice should be sent to all hourly employees of SCI at all of its locations who <u>could have been</u> permitted to work subject to any of [the seven] illegal policies of defendant." [Dkt. 243, 2:5-6] (emphasis added).  Plaintiffs do not provide any explanation or direction as to <u>which</u> of the more than 11,000 hourly employees working in over 500 different hourly positions "<u>could have been</u> permitted to work" subject to the alleged policies.  Do Plaintiffs suggest that <u>they</u> will determine which employees "could have been permitted to work" subject to these policies?  Will the <u>Court</u> make that determination?  Will each of the more than 40 Employers have an opportunity to contest which, if any, of their hourly employees and/or hourly positions "could have been permitted to work" subject to the policies that Plaintiffs' identify?

These questions arise because Plaintiffs' proposed class definition is simply too amorphous for recognition.  Plaintiffs are asking the Court to certify the largest class possible, but they have failed to consider <u>how</u> the members of that class would be determined.  It would be too administratively difficult to ascertain whether any given individual is a member of Plaintiffs' proposed class, and the class therefore is patently unworkable.  *See White v. Williams*, 208 F.R.D. 123 (D. N.J. 2002) (in case alleging racial profiling during traffic stops, proposed class was rejected where plaintiff failed to set forth any parameters for distinguishing between persons who were breaking a traffic law when they were stopped and those who were not, and those who received citations and those who did not.)  Conditional certification should be denied.

3.  <u>Plaintiffs' Merits-Based Subclasses Are Unworkable</u>.

Plaintiffs' conditional certification bid faces another insurmountable obstacle: their blatantly merits-based class definitions.  "It must be 'administratively feasible to determine whether a given individual is a member of the class.'"  *Mueller v. CBS, Inc.,* 200 F.R.D. 227, 233 (W.D. Pa. 2001) (quoting *In re Tetracycline Cases,* 107 F.R.D. 719, 728 (W.D. Mo. 1985)).  In other words, Plaintiffs must define the class in a way that allows the court to determine whether a particular individual is a class member without inquiring into the merits of their claims.  *See, e.g., Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403 (E.D. Pa. 1995) (finding a class definition untenable where determining class membership required a mini-hearing on the merits as to each potential class member).  Class definitions that require mini-trials of each putative member's claims defeat the purpose of certification.  *See, e.g., Forman,* 164 F.R.D. at 403; *Mueller,* 200 F.R.D. at 233-34 (denying certification under Rule 23 for a class defined as all former employees who were terminated in order to interfere with their ERISA rights because an individual had to show that the defendant violated his rights in order to establish class membership); *The Shoe Barn, Ltd. v. Acme Boot Co., Inc.,* Civ. Action No. 78-1666, 1979 WL 1682, at *3 (E.D. Pa. May 30, 1979) ("[W]here membership in the class is based upon subjective considerations applicable to each potential class member, the class is simply too amorphous for recognition as a class.")

Here, membership in each of Plaintiffs' proposed subclasses is <u>entirely</u> dependent upon an adjudication of each potential class member's claims.  Each subclass definition incorporates one of the Plaintiffs' substantive claims, requiring the Court to delve into their claims to determine which individuals fall into the class definition and are entitled to notice.  For instance, membership in Subclass I requires a finding that a potential class member performed, but was not compensated for, Community Work.  [Dkt. 243, p. 5].  To identify any class members for just this one subclass, the Court would need to

perform an individualized inquiry to determine which potential class members performed community work, whether the Defendants required the individual to perform the particular work in question or even knew about it, and which individuals, if any, were entitled to, but did not receive, compensation.  Subclass II, related to Pre-Needs Appointment Policy, would require individualized inquiries to determine which, if any, potential class members presented and/or sold pre-needs policies after normal work hours, whether such work was recorded, and whether individuals who performed that work were compensated for their time.  The remaining five subclasses require similar individualized inquires to identify which potential class members, if any, were subject to the allegedly unlawful policies as described.  At bottom, these merits-based definitions are simply unworkable and would compel the Court to resolve the merits of this case of each potential class member just to determine who should get notice.

    Indeed, Plaintiffs' own evidence highlights the difficulty in their class definitions, as their declarants greatly differ in the claims that they assert.  Despite the fact that three declarants from Florida held the same Family Services Counselor job title, they do not assert the same claims.  For example, Russel Slotnick [Exh. E] alleges that he was subject to a company-wide Training Policy.  Marguerite Wickett [Exh. F] and Patricia Kaiser [Exh. G] do not.  The same is true for employees across different states, even where they held the same positions.  Whereas Mark Sileo (Funeral Director/Embalmer, Connecticut) [Exh. C] alleges that he was subject to a company-wide Community Work Policy and a company-wide Pre-Needs Policy, Frank Acuna (Funeral Director/Embalmer, Arizona) [Exh. J] does not allege that he was subject to either.  Conversely, Acuna alleges that he was subject to a company-wide Training Policy, but Sileo does not.  *Id*.  The lack of common claims even among individuals who held the same position shows that the Court would need to engage in a highly individualized inquiry simply to determine the scope of notice in each subclass.  Class definitions that

1  require mini-trials to identify class members, such as Plaintiffs' proposed subclasses,

2  preclude issuance of notice.

3  **III.   OBJECTIONS TO PLAINTIFFS' PROPOSED FORM OF NOTICE**

4  Defendants object to Plaintiffs' proposed form of notice on three grounds.  First,

5  the notice fails to set a deadline by which members of the putative class must opt in to

6  the action.  Next, Plaintiffs' demand that notice must be sent by email and by publication

7  in SCI's newsletter, in addition to first class mail, is unwarranted and unduly

8  burdensome.  Finally, Plaintiffs are not entitled to phone numbers, or social security

9  numbers of putative class members as they request.

10  **A.   Any Form of Notice Must Set a 60-Day Deadline for Opting In**

Where a district court authorizes the named plaintiffs in a FLSA collective action

11  to send notice to all potential plaintiffs, it may set a deadline for plaintiffs to join the suit

12  by filing opt-in consent forms.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

13  172 (1989); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir.

14  2000).  Plaintiffs' proposed form of notice fails to include a deadline by which members

15  of the putative class may opt into the collective action.  [Dkt. 243; Dkt. 244-3, Exh. B].

16  Without a deadline to opt-into the action, the class could continue to grow in perpetuity.

17  District courts within the Ninth Circuit have found that "[s]ixty days is sufficient time for

18  a class member to receive the notice, ask any questions of Plaintiffs or their counsel, and

19  make an informed choice as to whether or not they wish to participate." *Delgado v.*

20  *Ortho-McNeil, Inc.*, 2007 WL 2847238, at *4 (C.D.Cal. Aug. 7, 2007); *see also Williams*

21  *v. Trendwest Resorts, Inc.*, 2006 WL 3690686, at *7 (D. Nev. Dec. 7, 2006) (60-day

22  deadline to opt-in is reasonable); *Stanfield v. First NLC Financial Services, LLC*, 2006

23  WL 3190527, at *6 (N.D. Cal. Nov. 1, 2006) (60-day deadline); *Beauperthuy v. 24 Hour*

24  *Fitness USA, Inc*., 2007 WL 2462120 (N.D. Cal. Aug. 28, 2007) (60-day deadline);

25  *Hoffman v. Securitas Sec. Services*, 2008 WL 5054684, at *16 (D. Idaho Aug. 27, 2008)

26

(60-day deadline).  With respect to any notice that issues, Defendants hereby request that the Court set a 60-day deadline for plaintiffs to opt into the class.

### B. Email and Newsletter Publication Should Be Denied

Plaintiffs request an order requiring Defendants to send notice to class members via first class mail <u>and</u> email, to publicize notice three times in Defendants' employee newsletter or other employee communication, and to post notices and opt-in forms at all of Defendants' locations.  [Dkt. 243-1].  Defendants object to emailing notice and publishing notice in Defendants' newsletter or other communication on the grounds that these methods of notice, in addition to first class mail and on-site posting, would be unduly burdensome and duplicative.  Furthermore, Plaintiffs have provided no justification for their request to go beyond first class mail.

A certified class must receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) quoting  Fed. R. Civ. P. 23(c)(2).  Historically, first class mail has been found to be the best notice practicable "because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members."  *Reab*, 214 F.R.D. at 630.  With regarding to class certification notification, first class mail is the preferred method of notification.  *Id*.

It has been recognized that there are inherent risks associated with electronic notice, which do not exist with first class mail.  On one hand, first class mail ensures the integrity of a judicially controlled communication directed to the intended audience. *Reab*, 214 F.R.D. at 630.  On the other hand, "electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court.  Electronic mail heightens the risk that the communication will be reproduced to large numbers of people

1   who could compromise the integrity of the notice process.  In addition, email messages

2   could be forwarded to nonclass members and posted to internet sites with great ease." *Id*.

3   at 630-31.  For these reasons, first class mail is the safer and more effective method of

4   notification.

5        Courts routinely deny plaintiffs' request to send notice by email and/or publication

6   in addition to first class mail, where the plaintiffs fail to cite any legal authority in

7   support of their request, or where they fail to make a showing that such additional notice

8   is necessary under the circumstances.  *See Reab*, 214 F.R.D. at 630 (denying request for

9   email notice and notice posted on internet website; ordering notice by first class mail

10   only); *Sherrill v. Sutherland Global Serv., Inc.*, 487 F.Supp.2d 344, 350-51 (W.D.N.Y.

11   2007) (denying plaintiffs' request to email notice and publicize notice three times in the

12   employee newsletter, finding that these methods in addition to first class mail and break-

13   room posting were broader than necessary); *Summa v. Hofstra University*, 2008 WL

14   3852160 (E.D.N.Y. Aug. 14, 2008) (denying additional email information where plaintiff

15   provided no justification for her request to go beyond first class mail).

16        In *Rubery v. Buth-na-Bodhaige, Inc.*, 569 F.Supp.2d 334, 338 (W.D.N.Y. 2008),

17   Plaintiffs' counsel, Dolin, Thomas & Solomon, LLP, made the same request that they

18   make in this case, to send notice via email and newsletter publication in addition to first

19   class mail.  The court denied their request finding that plaintiff had "made no showing

20   that would justify going beyond the belt-and-suspenders approach of utilizing both

21   mailed and posted notices, and requiring defendant to further notify its employees via

22   company e-mail and newsletter publications." *Id*.  The court ordered notice to be sent via

23   first class mail only, and ordered all opt-in forms to be filed within 60 days of the date

24   that the notices were mailed.  *Id*. at 338-339.  In this case, Plaintiffs have also failed to

25   make a showing as to why email or newsletter publication is necessary in addition to first

26   class mail.  There is no evidence that more Plaintiffs will be reached by email or the

employee newsletter, than would be by first class mail.  Moreover, sending notice by email and employee newsletter, in addition to first class mail and on-site posting, would be unduly burdensome and unnecessarily excessive.  Electronic notice also poses inherent risks that are not associated with first class mail.  Plaintiffs' request to send additional notice by email and newsletter publication must be denied.

### C. Plaintiffs Are Not Entitled to Phone Numbers or Social Security Numbers

Plaintiffs demand that Defendants produce to them the phone numbers and social security numbers of all putative class members.  [Dkt. 243-1].  As the Supreme Court has held, the plaintiffs in a collective action proceeding are entitled to certain information about the putative class members in order to effect notice.  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  That information, however, is generally restricted to the names and addresses of putative class members.  *See id.* (affirming district court's order permitting discovery of the names and addresses only of the putative class members).

Courts routinely reject plaintiffs' requests for putative class members' phone numbers, social security numbers, and other information where the plaintiff provides no justification for requesting that additional information.  *See Summa v. Hofstra University*, 2008 WL 3852160, at *7 (E.D.N.Y. Aug. 14, 2008) (rejecting plaintiffs request for social security numbers and email addresses where no justification was shown); *Lewis v. ASAP Land Express, Inc.*, CV-07-2226-KHV, at *2 nt.1 (D. Kan. Jun. 12, 2008) (rejecting plaintiffs' request for telephone numbers and social security numbers because "plaintiff has not justified discovery of this information.")  Plaintiffs have failed to offer any justification for requesting the telephone and social security numbers of members of the putative class.  The disclosure of this information would violate the privacy rights of the Employers' current and former employees.  *See Campbell v. Pricewaterhouse Coopers,*

*LLP*, 2008 WL 2345035 (E.D. Cal. Jun. 5, 2008) (denying disclosure of telephone numbers where employer argued such disclosure would violate the privacy rights of current and former employees).  Accordingly, Plaintiffs' request should be denied.

On occasion, courts will permit the discovery of telephone and/or social security numbers only for those putative class members who cannot be reached by first class mail. *See Campbell*, 2008 WL 2345035; *Barnwell v. Corrections Corp. of America, Inc.*, 2008 WL 5157476 (D. Kan. Dec. 9, 2008).  In *Campbell*, the plaintiffs requested disclosure of the putative class members' phone and social security numbers.  *Id*. at 3.  The plaintiffs argued that, in the event that the mailed notice is returned undeliverable, knowledge of the individual's social security number would be helpful to ascertain their new address. *Id*.  The court denied the request as to the telephone numbers, but ordered the defendant to produce <u>only those</u> social security numbers where the notices are returned undelivered. *Id*.  At a bare minimum, Defendants here should be required to produce social security numbers of only those putative class members whose notice is returned undelivered.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' have failed to identify a definable putative class.  Moreover, Plaintiffs' have failed to show that they are similarly situated with the nationwide group of persons referenced in their Motion for Notice.  Accordingly, Plaintiffs' Motion for Notice should be denied on its face.  Defendants strongly believe that Plaintiffs' Motion should be denied in its entirety.  However, to the extent this Court believes that Plaintiffs have met any aspect of their burden, the notification should be limited to the job descriptions of those people signing an affirmation.  The class should also be limited to those locations of those individuals' employment.  There is no other evidence to justify notice beyond that locale.  Consistent with this alternative approach, Defendants are submitting a Proposed Order consistent with its position.  The Order does not suggest that Defendants believe the Court should grant the pending Motion, but

1   submits it for the Court's consideration in the alternative.

2          Additionally, the Court should strike those portions of Plaintiffs' affirmations

3   [Dkt. 244-4, Exh. C-G, I-K], which were offered in support of Plaintiffs' Motion for

4   Notice, on the grounds that they lack foundation.  The Court should also strike the

5   Affirmation of Stephanie Brown [Dkt. 244-4, Exh. H] on the grounds that Brown was not

6   employed during the violation period.  Finally, Defendants renew their objections to

7   Plaintiffs' proposed form of notice as set forth in Section III above.

8          RESPECTFULLY SUBMITTED this 29th day of January, 2009.

9                                          QUARLES & BRADY LLP
                                           Two North Central Avenue
10                                         Phoenix, AZ  85004-2391

11

12                                  By    s/  Lonnie J. Williams, Jr.
                                          Lonnie J. Williams, Jr.
13                                        Benjamin J. Naylor

14                                  Attorneys for Defendants

15  I hereby certify that on the 29th day of January, 2009,
    I electronically transmitted the foregoing document to the Clerk's
16  office using the ECF System for filing and transmittal of a
    Notice of Electronic filing to the following ECF registrants:
17
    Bradley H. Schleier
18  Tod F. Schleier
    Justin Cordello
19  Annette Gifford
    Michael J. Lingle
20  Patrick J. Solomon
    J. Nelson Thomas
21  Kyle T. McGee
    Charles H. Saul
22  Liberty J. Weyandt
    Matthew W. Lampe
23  Amy E. Dias
    Steven H. Gurnee
24

25    s/ Debbie Messing

26  QB\850774.00016\7259039.5

-28-