1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Stickle, et al., | No. CV-08-083-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| SCI Western Market Support Center, L.P., et al., | |
| Defendant. | |

Currently pending before the Court is Defendants SCI Western Market Support Center, L.P., et al.'s Motion to Dismiss All Opt-In Plaintiffs Who Have Failed to Comply With This Court's Discovery Orders. (Doc. 1795). After reviewing the pleadings, and conducting oral argument, the Court issues the following Order.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

In November 2009, Defendants submitted a set of eleven (11) interrogatories to each of the approximately 1,400 individuals who "opted-into" this Federal Labor Standards Act ("FLSA") class action as Plaintiffs. On January 12, 2010, the Court held a hearing where Plaintiffs were ordered to respond. (See Doc. 1478, 1484). In determining that individual responses to Defendants' interrogatories were necessary, the Court stated the following:

> I have reviewed each of the 11 interrogatories, and I do not find that it would be overly burdensome for each individual opt-in plaintiff to answer these

> questions. In fact, most of them are answering in a box. I think question 11 might require a little bit more narrative, but I think that the interrogatories are easy to follow and seek very obvious information.
>
> It's important to note that the plaintiffs in this case claim that defendants allegedly violated the FLSA by implementing seven different payment policies. And it seems reasonable that the defendant ought to be entitled to know which policy plan each opt-in plaintiff is proceeding under.
>
> This is the type of general information that the defendants need to adequately defend themselves against the thousand plus individual claims that have been brought against them. It seems that this information will be important and necessary for the Court to determine how many people are claiming to be members of what subgroup. And the Court will need to assess all of this type of information on whether it will decertify certain groups later.

(Doc. 1482, p. 11-12).

On April 5, 2010, the Court held yet another hearing to deal with Defendants' interrogatories, among other discovery related concerns. (Doc. 1503). At this hearing, Defendants pointed out—despite the Court's previous Order overruling Plaintiffs' objections to the set of eleven interrogatories—that all of the individual opt-in Plaintiffs who had answered the interrogatories included <u>identical</u> objections and <u>verbatim</u> qualifying language in their responses. Defendants argued that the responses obscured the questions presented and rendered the interrogatories worthless. Defendants also noted that many individual opt-in Plaintiffs had altogether failed to answer. (<u>See</u> Doc. 1503, 1505). The Court then ordered all individual opt-in Plaintiffs to submit new responses to Defendants' interrogatories. For those opt-in Plaintiffs that had submitted non-conforming responses, the Court directed that they respond in a manner more responsive to Defendants' questions. For those individual opt-in Plaintiffs who had yet to respond, the Court determined that those individuals would be provided with another opportunity to answer Defendants' interrogatories. The Court proceeded to set May 14, 2010 as the deadline for all opt-in Plaintiffs to submit revised interrogatory responses. Counsel for Defendants then suggested that the Court set an appropriate sanction in advance of any responses. Defense counsel requested the ultimate sanction of dismissal for any opt-in Plaintiffs failing to submit conforming responses by May 14, 2010. This request was strongly opposed by Counsel for Plaintiffs. The Court concluded the hearing by directing the Parties to submit supplemental briefing on May 14, 2010 as to

1 the sanction issue, noting that "the Court will entertain briefing as to why [dismissal of
2 non-responsive opt-in plaintiffs] wouldn't be [an appropriate] sanction absent good cause."
3 (Doc. 1484).

4 On May 14, 2010, both Parties submitted supplemental briefing as to the appropriate
5 sanction for opt-in Plaintiffs who failed to comply with the Court's discovery Order. (Doc.
6 1524, 1526). On May 20, 2010, for purposes of creating a clear court record, Defendants
7 filed a Motion to Dismiss. (Doc. 1795). On June 16, 2010, the Court heard oral argument on
8 that Motion, which was supported by the Parties' earlier supplemental briefing.

## II. LEGAL ANALYSIS

While "the strong policy underlying the Federal Rules of Civil Procedure favor[s] decisions on the merits," Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986), for a variety of reasons not all cases are capable of being resolved in such a manner. The Ninth Circuit has consistently reaffirmed the inherent power of district courts to control their dockets and "[i]n the exercise of that power . . . impose sanctions." Although disfavored, dismissal of either a claim or a party is considered an appropriate sanction for flagrant violations of court orders. See, e.g. Hingano v. Channing & Ass'n, LLC, 2010 U.S. Dist. LEXIS 5558, *3-4 (E.D. Cal. Jan. 4, 2010) (citing Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987)). Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986). In addition, Federal Rule of Civil Procedure 37 provides the district court with the explicit discretion to fashion sanctions, up to and including dismissal, in response to a party's failure to comply with a court's discovery order. Valley Eng'rs, Inc. v. Elec. Eng'g Co., 158 F.3d 105, 1057 (9th Cir. 1998) (internal quotations omitted). "Fairness demands that the severe sanction of [dismissal] may not be imposed under Rule 37[] in the absence of willfulness, bad faith, or fault." Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1340 (9th Cir. 1985).

In determining whether to dismiss a party or a claim for failure to comply with a court order, the district court weighs five non-exclusive factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their

merits; and (5) the availability of less drastic alternatives." See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (internal citations omitted).

There are several categories of opt-in Plaintiffs who have failed to comply with the Court's April 5, 2010 Order, which, as previously stated, required the submission of revised interrogatory responses—and in some cases first time responses—on or before May 14, 2010. The first category of opt-in Plaintiffs are those individuals who did not submit responses by May 14, 2010 while also failing to submit earlier non-conforming responses. The second category are those opt-in Plaintiffs who initially submitted non-conforming responses, but then failed to submit amended responses. The third category are those opt-in Plaintiffs who submitted conforming responses, but did so after the May 14, 2010 deadline. For reasons set forth below, the Court finds dismissal of all three categories of opt-in Plaintiffs is warranted and necessary.

Under the facts of this case, the first factor that Court believes it should consider is that of notice. See generally In re Rubin, 769 F.2d 611, 616 (9th Cir. 1985). Class actions brought under the FLSA are markedly different from those brought under Rule 23 of the Federal Rules of Civil Procedure. See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989). Unlike Rule 23 class actions where class members are affirmatively bound by a final judgment unless they have opted-out of the litigation, under 29 U.S.C. § 216(b), potentially aggrieved current and former employees of a defendant must affirmatively opt-into the lawsuit to become members of a putative class. For this reason, in FLSA class actions, district courts utilize a unique multi-tiered process whereby (1) a class is conditionally certified for notification purposes; (2) the Court issues collective action notification, informing potentially aggrieved individuals of the right to opt-into the litigation; (3) a period of decertification discovery is undertaken; and (4) at the conclusion of discovery, the Court rules on a motion for decertification. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001); Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 989-90 (C.D. Cal. 2006). If a plaintiff's case can withstand a decertification motion, the district court will generally entertain dispositive motions before proceeding to a trial on the merits.

Edwards, 467 F. Supp. 2d at 990 n.1. As the Parties are aware, this Court granted Plaintiffs' Motion for Collective Action notification and conditionally certified Plaintiffs' class for notification purposes. (Doc. 307). The Court then authorized a form of notice to potentially aggrieved current and former employees of Defendants. All potentially aggrieved current and former employees were then given until December 2009 to opt-into the lawsuit. (Id., p. 12). Following the issuance of the Court's collective action notification form, and much to the disappointment of the Court, Plaintiffs sent out multiple unauthorized notification forms to the potentially aggrieved individuals. (See Doc. 1482, p. 15-16, 24-25). These collective action notifications/communications constituted one basic level of notice that the opt-in Plaintiffs received concerning this litigation. Although these initials notifications did not notify Plaintiffs of the necessity or consequences associated with failing to respond to a discovery request or a Court Order, in a more general sense, the individuals who opted-into this case as Plaintiffs took an affirmative act that act gave rise to certain duties and obligations on the part of them and their Counsel. The most paramount being compliance with, and responsiveness to, this Court's Orders.

Turning to the specific notice provided to the opt-in Plaintiffs concerning Defendants' set of eleven interrogatories, the opt-in Plaintiffs—or more specifically, their Counsel—received notice of the interrogatories on November 20, 2009, which is when they were issued by Defendants. (Doc. 886). The opt-in Plaintiffs again received notice on January 12, 2010, when this Court overruled Plaintiffs objections and directed them—through their Counsel—to respond. Notice was again provided on April 5, 2010, where the Court directed the opt-in Plaintiffs to submit responses to Defendants' discovery request. At the April 5, 2010 hearing, the issue of sanctions, specifically dismissal, was addressed by Defense Counsel. In fact, Defense Counsel requested the Court to automatically dismiss all non-responsive opt-in Plaintiffs, without the submission of additional briefing. The Court rejected Defense Counsel's proposition, but directed the Parties to submit briefing as to whether dismissal was appropriate, and to have those briefs filed on the date the discovery responses were due. In light of the procedural history, the Court finds that the opt-

in Plaintiffs were provided with sufficient notice that discovery responses were required by the Court, and that failure to comply might result in their dismissal from lawsuit, thereby extinguishing their claims for unpaid overtime wages under the FLSA.

In addition, while Plaintiffs have correctly cited to the requirement that a litigant must be provided notice that his/her failure to respond might lead to dismissal, Plaintiffs' understanding regarding the type of notice required is incorrect. Plaintiffs argue that while the risk of dismissal was clear to counsel, there was never clear and direct notice provided to the opt-in class by the Court. This contention must be rejected. The Court is unaware of any case law that would require it to directly communicate with a litigant, rather than with a litigant's attorney, regarding the consequences of failing to respond to a discovery request.

The next issue that the Court must consider is that of prejudice. The Ninth Circuit has stated that, "[d]ue process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in which the deception relates to the matters in controversy and prevents their imposition merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." Fjelstad, 762 F.2d at 1338 (internal citations omitted). Here, Plaintiffs' Complaint alleges that to evade paying federally mandated overtime wages Defendants implemented seven different payment policies: "Community Work Policy," "Pre-Needs Appointment Policy," "Training Compensation Policy," "Meal Break Deduction Policy," "Pre-Approval for Overtime Pay Policy," "Unrecorded Work Time Policy," and "Failure to Include All Remuneration in Overtime Calculation Policy." It is important to note that not all of the opt-in and named Plaintiffs claim that they were harmed by each of Defendants' seven alleged policies. As such, Defendants' interrogatories sought to inquire how many of the approximately 1,400 Plaintiffs were subject to each of the seven policies. That is why at the January 12, 2010 hearing, the Court stated that "it seems reasonable that the defendant[s] ought to be entitled to know which policy plan each opt-in plaintiff is proceeding under," and "[t]his is the type of general information that the defendants need to adequately defend themselves against the thousand plus individual claims that have been brought against them." (Doc. 1482, p. 11-12). Because Defendants' stated

1   intent is to move to decertify the class at the conclusion of discovery on the grounds that the
2   named Plaintiffs are not "similarly situated" to the opt-in Plaintiffs, the Court permitted
3   limited individualized discovery to the opt-in class as a whole.

4   While the Court has curtailed Defendants' ability to propound class wide discovery, where such discovery has been authorized, securing complete and accurate responses is vital. In fact, absent complete responses to the individual interrogatories, it would difficult for either Party or the Court to discern how many of the approximately 1,400 opt-in Plaintiffs were subject to the seven alleged payment policies. Accordingly, the potential for prejudice is high, as these interrogatories represent the only meaningful attempt by Defendants to propound class wide discovery concerning some of the most basic factual issues.

11  The next issue involves judicial economy and case management. The Court and the Parties have already spent significant resources litigating this discovery issue. There have been three hearings and two rounds of briefing all dealing with Defendants' interrogatories and the opt-in Plaintiffs various attempts to respond. At some point, the Court's interest in finality becomes overwhelming. See Ferdik v. Bonzelet, 963 F.2d 1258. 1261 (9th Cir. 1992) ( affirming "the district courts' power to manage their dockets without being subject to [] endless vexatious noncompliance"). As the Court has indicated, Defendants are entitled to receive adequate and timely responses to their reasonable discovery requests. Given the centrality of the information sought, absent resolution, the Court and the Parties are likely to continue spending significant time and resources attempting to secure future responses from the non-complying opt-in Plaintiffs. As such, judicial economy and principles of fairness clearly favors dismissing those opt-in Plaintiffs who either (1) did not submit any interrogatory responses; or (2) those Plaintiffs that submitted non-conforming responses, but then failed to submit amended responses.

25  As to the third category of opt-in Plaintiffs—those individuals who ultimately submitted conforming responses, but did so after the May 14, 2010 deadline—the Court finds that judicial economy and fairness also favors their dismissal. In the Court's view, all opt-in Plaintiffs who failed to submit adequate responses by May 14, 2010 are in violation of the

1 | Court imposed deadline, and all possessed notice of the potential consequences for such a
2 | violation. In other words, all of these individuals are in the same boat. There is no obvious
3 | reason why an opt-in Plaintiff who responded on May 15, 2010—one day late—should be
4 | treated any differently than an opt-in Plaintiff who responded on June 16, 2010—the date
5 | that the Court heard oral argument on Defendants' dismissal motion—or on August 1, 2010,
6 | or for that matter, an opt-in Plaintiff who has yet to respond but may do so in the future. The
7 | Court will not engage in arbitrary line drawing or, as it has previously indicated, endorse an
8 | open ended stay on this important issue. The Court was sufficiently clear that the May 14,
9 | 2010 deadline was firm. Fairness to all interested Parties requires closure, and closure
10 | occurred on May 14, 2010, not one day later or several months later.

Because the Court has determined that there is no meaningful way to differentiate between opt-in Plaintiffs who submitted late responses and those who have yet to respond at all, the Court finds that the judicial economy and fairness favors dismissal of all non-conforming opt-in Plaintiffs.

As to the next factor, whether a sanction short of dismissal can be assessed, the Court finds that no sanction other than dismissal is appropriate, given the importance of the information being sought.

Finally, the Court must reject Plaintiffs' contention that willfulness or bad faith cannot be found on the facts here. See Fjelstad, 762 F.2d at 1337 ("Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's noncompliance must be due to willfulness, fault or bad faith."). As Plaintiffs note, in determining whether conduct is "willful" the Ninth Circuit has approved a standard "which requires the punished conduct to be within the litigant's control." Id. at 1341. While Plaintiffs have stated that some of the opt-in Plaintiffs may have been confused as to the requirements, particularly in light of the revised responses that were Ordered, or that some of the Plaintiffs may have attempted to respond, but were unable to do so, nothing suggests that failure to comply with the Court's Order was somehow beyond the control of the opt-in Plaintiffs. The Court understands that Counsel for Plaintiffs are faced with significant

1 logistical challenges in coordinating their approximately 1,400 opt-in Plaintiffs. While the
2 Court recognizes those challenges, it must also note that it was the named Plaintiffs who
3 chose to pursue a nationwide class action and file a Complaint asserting seven different illicit
4 payment policies allegedly implemented by Defendants. As such, Plaintiffs are expected to
5 marshal the necessary resources to litigate the case effectively, which might include
6 aggressively tracking down hard to reach opt-in Plaintiffs, and clearly communicating to
7 them the consequences of their action or inaction.

8 In sum, after carefully considering the relevant factors set forth by the Ninth Circuit,
9 the Court has determined that it will dismiss from this lawsuit all opt-in Plaintiffs who did
10 not provide appropriate discovery responses as of May 14, 2010, and who failed to show
11 good cause for doing so.

12 As to the issue of good cause, the Court directs the Parties to meet and confer and
13 thereafter submit a joint list of all opt-in Plaintiffs who are to be dismissed and those who are
14 to be exempt for good cause. Examples of good cause includes, but is not limited to, (1)
15 military service, (2) death, (3) physical or mental infirmity or disability, or (4) lack of
16 English language skills. As the Court indicated at oral argument, those individuals who are
17 believed to have potentially lost their discovery responses in a postal truck fire are not
18 exempt. Moreover, illegible responses/signatures shall not be exempted for good cause
19 either.

20 **Accordingly,**

21 **IT IS HEREBY ORDERED** granting Defendants SCI Western Market Support
22 Center, et al.'s Motion to Dismiss All Opt-In Plaintiffs Who Have Failed to Comply With
23 This Court's Discovery Orders. (Doc. 1795).

24 **IT IS FURTHER ORDERED** directing the Parties to meet and confer, either
25 telephonically or in person, and thereafter provide the Court with a joint list of all opt-in
26 Plaintiffs who are to be dismissed and those who are to be exempt for good cause. This joint
27 listed must be filed by the close of business Monday, August 23, 2010. If the Parties are
28 unable to reach complete agreement, then the Parties must, by the same date, state the areas

of disagreement and set forth the reasons for the disagreement.

DATED this 13th day of August, 2010.

Mary H. Murguia
United States District Judge