# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **JAMES STICKLE,** *et al.*, | |
| Plaintiffs, | 2:08-cv-00083 JWS |
| vs. | **ORDER AND OPINION** |
| **SCI WESTERN MARKET SUPPORT CENTER, L.P.,** *et al.*, | [Re: Motion at Docket 2004] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 2004, defendants Service Corporation International ("SCI"), SCI Funeral and Cemetery Purchasing Cooperative, Inc. ("SCI Co-op"), SCI Western Market Support Center, L.P. ("SCI Western"), Jane D. Jones ("Jones"), Gwen Petteway ("Petteway"), Thomas Ryan ("Ryan"), Curtis Briggs ("Briggs"), and Julie Douglas ("Douglas"), and the SCI 401K Retirement Savings Plan ("the Plan") move pursuant to Federal Rule 56 for summary judgment. Plaintiffs Charlotte Stickle, on behalf of the deceased James Stickle ("Stickle"), Eleanor Riggio ("Riggio"), Frank Acuna ("Acuna"), Joseph Biernacki ("Biernacki"), Marisia Farmer, on behalf of the deceased Gordon

Farmer ("Farmer"), Richard LaMasters ("LaMasters"), and Kenneth Allen ("Allen") oppose the motion at docket 2014. Defendants' reply is at docket 2021.

## II. BACKGROUND

This lawsuit arises out of an alleged failure to pay overtime compensation in violation of the Fair Labor Standards Act.[1] SCI is a Texas corporation and parent company to numerous subsidiaries in the funeral industry–funeral homes, mortuaries, crematories, and cemeteries. Plaintiffs were employees of various subsidiaries of SCI–SCI Arizona Funeral Services, Inc., SCI Oregon Funeral Services, Inc., SCI California Funeral Services, Inc., and SCI Iowa Funeral Services. SCI Western provides human resources services to SCI subsidiaries in the western region. Whereas SCI is a holding company, the SCI Co-op is "the headquarters type company"[2] that performs corporate functions.[3]

**A. Individual Plaintiffs**

**1. James Stickle**

Stickle worked for several funeral homes affiliated with SCI. Stickle testified that he was not paid for overtime hours worked when he was on-call.[4] He maintains that it was an expected part of his employment that he perform uncompensated on-call work,[5] and that he performed such work for five years.[6] Stickle also testified that he was required to do uncompensated "community work" on behalf of SCI.[7] Stickle also

---

[1] 29 U.S.C. § 201 *et seq.*

[2] Doc. 2005-2 at 43.

[3] *See id.* at 45.

[4] Doc. 2016-4 at 56–58.

[5] *Id.* at 58.

[6] *Id.*

[7] *Id.* at 61.

maintains that he was required to work through his lunch breaks and that he was not compensated for that time.[8] Stickle testified that he saw an SCI directive indicating that employees would only be compensated for forty hours in any given workweek and that employees should clock out at 5:00 p.m.[9]

**2. Elanor Riggio**

Riggio testified that she worked for Green Acres Mortuary, and was therefore employed by SCI Arizona Funeral Services, Inc., from December 2004 until November 2005.[10] Even though Riggio stated that she was paid for overtime that she recorded,[11] Riggio maintains that she was instructed not to record overtime.[12] Riggio also maintains that she was not paid for certain on-call time.[13]

**3. Frank Acuna**

Acuna worked for various SCI affiliates in Arizona. He testified that he performed community work for which he was not compensated.[14] He also maintains that he was not compensated for training time, time spent working during meal breaks, and other overtime.[15]

---

[8]*Id.* at 66.

[9]*Id.* at 71.

[10]Doc. 2016-4 at 13.

[11]*Id.* at 32.

[12]*Id.* at 23.

[13]*See id.*

[14]Doc. 2016-2 at 9, 40.

[15]*Id.* at 14, 41.

-3-

**4. Joseph Biernacki**

Biernacki worked for an SCI affiliate in California. He maintains that he performed community work and on-call work for which he was not compensated.[16] Biernacki testified that he "often . . . worked more than 40 hours and . . . did not get paid" for that time.[17] Biernacki maintains that his managers made it clear that the community work requirement came from SCI.[18] He testified that when he voiced his complaints about the uncompensated community work and indicated he would record those hours, he was told he could lose his job.[19]

**5. Gordon Farmer**

Farmer worked for Oakmont Mortuary, an SCI affiliate in California, from June 2001 until November 2005.[20] Farmer is now deceased. In an affirmation presented in support of plaintiffs' response to defendants' motion for summary judgment, Farmer testified that he regularly worked overtime, on-call hours and was not compensated.[21] He also stated that he was not compensated for community work that he performed.[22]

**6. Richard LaMasters**

LaMasters was employed by SCI Iowa Funeral Services. LaMasters maintains that he was misclassified as an exempt employee and was consequently not paid overtime. LaMasters claims he was given back pay for the time he was misclassified, but that the payment did not cover unpaid meal breaks or on-call time and that he was

---

[16] Doc. 2016-3 at 75.

[17] *Id.* at 101.

[18] *Id.* at 85.

[19] *Id.* at 77.

[20] Doc. 2016-6 at 3.

[21] *Id.* at 7.

[22] *Id.* at 8.

-4-

only paid half-time, not time-and-a-half.[23] He also maintains that he was not paid for training time or community work.[24]

### 7. Kenneth Allen

Allen was employed by SCI Oregon Funeral Services, Inc. He maintains that his managers attached memos to his paychecks indicating he would not be paid for all of his overtime because he had incurred too much.[25] He testified that his manager threatened to fire him if he was not complicit in alteration to his timecard.[26] Allen also stated that he was not paid for community work or work performed during meal breaks.[27]

## B. Procedural History

All plaintiffs besides Biernacki and Farmer were class members in *Prise et al. v. Alderwoods Group, Inc.*, 06-1641 (W.D. Pa.), a collective action that asserted FLSA claims against SCI, SCI Western, and SCI Co-op, among other entities. Those plaintiffs were dismissed from that lawsuit on January 15, 2008, the day the complaint in the case at bar was filed.

Plaintiffs' complaint asserts claims against the SCI defendants, and two regional SCI entities who have since been dismissed. The complaint also named individual defendants, including Jones, SCI's Vice President of Human Resources; Ryan, SCI's President and CEO; Petteway, SCI Houston's Human Resources Director; and Briggs, a Vice President of SCI Co-op. The complaint alleges violations of the FLSA, RICO, and ERISA. The RICO and ERISA claims are in abeyance until plaintiffs' FLSA claims are resolved.

---

[23] Doc. 2016-4 at 110–11.

[24] *See id.* at 122–23.

[25] Doc. 2016-2 at 60.

[26] *Id.* at 72.

[27] *Id.* at 83, 109, 112.

On September 30, 2009, the court conditionally certified a class of employees who could have been subject to defendants' allegedly unlawful policies.[28] On April 25, 2011, the court granted defendants' unopposed motion to decertify the class.[29] All opt-in plaintiffs were dismissed. Only the named plaintiffs remain. After initially requesting that their claims be voluntarily dismissed,[30] the named plaintiffs elected to pursue their claims against defendants.[31] The present motion followed.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[33] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[34] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[35] The reviewing court may not weigh evidence or assess the credibility of witnesses.[36] The burden of persuasion is on the moving party.[37]

---

[28] Doc. 307.

[29] Doc. 1995.

[30] Doc. 1997 at 2.

[31] Doc. 1999.

[32] Fed. R. Civ. P. 56(a).

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[34] *Id.*

[35] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[36] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**IV. DISCUSSION**

**A. Statutes of Limitations Issues**

As a threshold issue, defendants base their statutes of limitations arguments on a chart that is attached to their motion as an exhibit. The source of the information contained in the chart is not clear. However, plaintiffs have indicated that their "end dates of employment are not disputed for purposes of this motion,"[38] and therefore, the court will rely on the chart's representations for the limited purpose of determining whether any claims are time-barred.

Section 255 of Title 29 provides that claims for unpaid overtime must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."[39] A cause of action for unpaid overtime accrues when the overtime is payable to the employee and not paid.[40] An action is commenced "on the date when the complaint is filed, if [the plaintiff] is specifically named as a party plaintiff" or "if [the plaintiff's] name did not so appear . . . on the subsequent date on which such written consent is filed in the court in which the action was commenced."[41] The court will assume that a cause of action for unpaid overtime could accrue on the final date of each plaintiff's employment.

---

[38]Doc. 2014 at 5 n.2.

[39]29 U.S.C. § 255(a).

[40]See Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993).

[41]29 U.S.C. § 256(a), (b).

**1. Facts Bearing on the Limitations Period**

### a. James Stickle

Stickle 's employment ended on August 1, 2006. He filed a consent form in *Prise* on December 10, 2006.[42] He filed a stipulation of dismissal in *Prise* on January 15, 2008, the same day the complaint in the instant case was filed.[43] Those claims arising after the January 15, 2006 claims are within the two-year limitations period.

### b. Elanor Riggio

Riggio's employment ended on November 1, 2005. She filed a consent form in *Prise* on December 18, 2006.[44] Riggio stipulated to a dismissal of her claims without prejudice in *Prise* on January 15, 2008.[45] Riggio's claims are time-barred unless she can establish willfulness or a basis for tolling the statute of limitations.

### c. Frank Acuna

Acuna's employment ended on June 1, 2006. He filed a consent form in *Prise* on March 19, 2007.[46] He filed a stipulation of dismissal in *Prise* on January 15, 2008.[47] Acuna's claims arising after January 15, 2006, are within the two-year limitations period.

### d. Joseph Biernacki

Biernacki's employment was terminated on March 1, 2006. He was not a plaintiff in *Prise*. The January 15, 2008 filing was within the two-year limitations period for claims accruing after January 15, 2006.

---

[42] Doc. 2016-1 at 25–26.

[43] *Id.* at 33.

[44] *Id.* at 22–23.

[45] *Id.* at 32.

[46] *Id.* at 16–17.

[47] *Id.* at 29.

### e. Gordon Farmer

Farmer's affirmation states that his employment ended in November 2005. He was not a plaintiff in *Prise*. Farmer's affirmation alleges a willful violation of the FLSA and therefore the January 15, 2008 filing of the instant complaint was within a three-year limitations period. Farmer's representative may seek to recover for claims accruing between January 15, 2005, and the termination of his employment in November 2005, provided willfulness is established.

### f. Richard LaMasters

LaMasters' employment ended on February 15, 2007. He filed a consent form in *Prise* on September 11, 2007.[48] He filed a stipulation of dismissal without prejudice on January 15, 2008.[49] Regardless, those claims accruing between January 15, 2006 and February 15, 2007 are within the two-year limitations period.

### g. Kenneth Allen

Allen's employment ended on December 31, 2004. He filed a consent form in *Prise* on March 26, 2007.[50] He filed a stipulation of dismissal without prejudice on January 15, 2008.[51] Allen's claims are outside the three-year limitations period unless there is some basis for tolling.

**2. Allen and Riggio's Claims**

**a. Class Tolling Based on *Prise***

Plaintiffs Allen and Riggio have asserted claims potentially outside the limitations period. Riggio's claims may be within the limitations period if she can establish that the alleged FLSA violations were willful. Allen's claims are barred unless there is some basis for tolling.

---

[48]*Id.* at 20–21.

[49]*Id.* at 31.

[50]*Id.* at 18–19.

[51]*Id.* at 30.

Defendants distort *In re Hanford Nuclear*[52] by citing it for the proposition that the "exact claims and defendants must be asserted in the subsequent action to reap the benefits of [the] class tolling doctrine."[53] Nevertheless, the policy discussion in that case bears on Allen's claims here. In *American Pipe v. Utah*, the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[54] In *Hanford Nuclear*, the Ninth Circuit held that "members of [a] plaintiff-class who have filed individual suits are entitled to the benefits of *American Pipe* tolling."[55] The court reasoned that "[s]tatutes of limitations are intended to provide notice to defendants of a claim before the underlying evidence becomes stale."[56] That reasoning does not apply when a member of a plaintiff-class files suit against a different defendant after stipulating to voluntary dismissal in a prior action.

Even if the court were to accept that the limitations period applicable to Allen's claims should be tolled by virtue of his consent in that case, there are only three defendants common to both *Prise* and the instant case–SCI, SCI Western, and SCI Co-op. Allen's claims against all other defendants are outside the limitations period. Plaintiffs have presented no argument in favor of tolling Allen's claims against defendants who were not named in *Prise*. Accordingly, Allen's claims against Jones, Petteway, Ryan, Briggs, and Douglas are time-barred.

---

[52]534 F.3d 986 (9th Cir. 2008).

[53]Doc. 2021 at 7.

[54]414 U.S. 538, 554 (1974).

[55]534 F.3d at 1009.

[56]*Id.*

### b. Equitable Tolling

In *Partlow v. Jewish Orphans' Home*,[57] the Ninth Circuit found that equitable tolling was proper in an FLSA action where "the consenting employees were clearly without fault" and "the practical effect of not tolling the statute would be to bar forever any claim the consenting employees might have against [the defendant] under the FLSA." In *Partlow*, the court noted that the consenting plaintiffs should not "be assigned responsibility for the actions of named plaintiffs' counsel."[58]

This lawsuit is no longer a collective action. The equitable considerations espoused in *Partlow* can only bear on claims against SCI, SCI Western, and SCI Co-op because they were the only defendants named in a previous collective action. Because Allen's stipulation of dismissal in *Prise* was not his "fault," and because the absence of tolling here would forever bar any FLSA claim Allen has against those entities, the court concludes that equitable tolling is appropriate. Therefore, Allen's claims against SCI, SCI Western, and SCI Co-op are not barred by the applicable statute of limitations.

### c. Willfulness

Riggio's claims are within the applicable statute of limitations if she can establish willfulness.[59] "A violation of the FLSA is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."[60] Riggio testified at her deposition that her manager told her not to record time spent doing community work.[61] She also testified that another manager instructed her to deduct a

---

[57] 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

[58] *Id.*

[59] 29 U.S.C. § 255(a).

[60] *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003).

[61] Doc. 2016-4 at 26.

-11-

full meal break even though she had not taken one.[62]  At the very least those statements create a genuine dispute as to a material fact concerning willfulness. Summary judgment in defendants' favor as to Riggio's claims is therefore not appropriate on the basis of the statute of limitations.

**B. Whether Defendants' Written Policies Required Reporting of Overtime is Immaterial**

The Fair Labor Standards Act ("FLSA") provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed."[63]  "Employ," as used in the FLSA, "includes to suffer or permit to work."[64]  "Suffer or permit" means "with knowledge of the employer."[65]  It is sufficient if "[t]he employer knows or has reason to believe that" the employee is working overtime.[66]

Defendants argue that plaintiffs have not produced evidence of any illegal written policies.  Defendants emphasize that "[p]laintiff's claims are based upon the assumption that [d]efendants issued national policies that were illegal."[67]  Although the existence of national policies was relevant to the certification question, it is not relevant to plaintiffs' individual claims.  "An employee seeking to recover unpaid . . . overtime under the

---

[62]*Id.* at 28.

[63]29 U.S.C. § 207(a)(1).

[64]29 U.S.C. § 203(g).

[65]*Fox v. Summit King Mines*, 143 F.2d 926, 932 (9th Cir. 1944).

[66]*See* 29 C.F.R. § 785.11.

[67]Doc. 2004 at 8–9.

-12-

FLSA has the burden of proving that he performed work for which he was not properly compensated."[68] The regulations clarify that

> it is the duty of the management to exercise its control and see that the [overtime] work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. *The mere promulgation of a rule against such work is not enough.* Management has the power to enforce the rule and must make every effort to do so.[69]

Consequently, defendants' policy that employees report their overtime is not fatal to plaintiffs' claims.

Plaintiffs' deposition testimony describes the allegedly illegal policies as unwritten. Defendants' theory would allow an employer to shield itself from liability under the FLSA by nominally requiring employees to report all overtime, or nominally forbidding overtime work, even if the employer verbally instructed employees to work such hours and not report them. The absence of a written policy requiring overtime work without compensation is not surprising and does not form an adequate basis for summary judgment in defendants' favor.

**C. Evidence of Knowledge**

Defendants argue that plaintiffs have not produced any evidence that defendants knew of plaintiffs' overtime work. In *Forrester v. Roth's I.G.A. Foodliner*,[70] the Ninth Circuit held that "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer . . . the employer's failure to pay for the overtime hours is not a violation of" the FLSA.

Plaintiffs respond that "defendants have presented no evidence whatsoever . . . that defendants had no knowledge of plaintiffs' uncompensated overtime."[71] Even

---

[68]*Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (internal quotation omitted).

[69]29 C.F.R. § 785.13.

[70]646 F.2d 413, 414 (9th Cir. 1981).

[71]Doc. 2014 at 12–13.

-13-

though the burden of production is on defendants,[72] it is part of the plaintiff's burden to show that the employer had knowledge of the hours worked.[73] Plaintiffs' argument confuses those burdens.

Plaintiffs separately maintain that they "have presented facts showing that their managers either knew or should have known they performed uncompensated overtime work."[74] The managers are not defendants to this lawsuit. Nonetheless, plaintiffs argue that plaintiffs' testimony "that their supervisors were aware of their work beyond their scheduled hours is sufficient to create a genuine issue of material fact as to whether the employer had constructive knowledge of the uncompensated overtime."[75] Plaintiffs cite a case from the Eleventh Circuit in support of that proposition.

In *Allen v. Bd. of Pub. Educ.*, the Eleventh Circuit noted that "an employer can be charged with constructive knowledge even when an employee has not alleged a supervisor's direct knowledge."[76] Specifically, "if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge."[77] The court stated that "[a]n employer is not excused merely because his business requires him to rely on subordinates and personal supervision is not possible."[78]

---

[72] *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

[73] *See Brock v. Seto*, 790 F.2d 1446, 1447–48 (9th Cir. 1986) ("An employee seeking to recover unpaid . . . overtime under the FLSA has the burden of proving that he performed work for which he was not properly compensated.").

[74] Doc. 2014 at 12.

[75] *Id.*

[76] 495 F.3d 1306, 1321 (11th Cir. 2007).

[77] *Id.*

[78] *Id.*

The Eleventh Circuit's conclusions flowed from *Brennan v. Gen. Motors*,[79] a Fifth Circuit case that bears close resemblance to the case at bar. In *Brennan*, the employer argued that "it did not violate the FLSA because the company had no actual or constructive knowledge that the[] employees were working unreported, uncompensated hours of overtime."[80] Specifically, the employer argued that it "relied on its employees to report fully all the hours worked."[81] The trial court had determined that the employees' immediate supervisors had discouraged overtime reporting. The Fifth Circuit concluded that even though upper management encouraged truthful reporting, the company could not "disclaim knowledge when certain segments of its management squelched truthful responses."[82]

Here, plaintiffs maintain that their immediate supervisors discouraged overtime reporting.[83] Because *Forrester* did not involve such allegations, it does not control. The court concludes that, under the circumstances, the Fifth Circuit's reasoning in *Brennan* is persuasive. It does not make sense to permit an employer to disclaim knowledge of false reporting when its managers are allegedly to blame for the falsity. Defendants' lack of actual knowledge therefore does not provide an adequate basis for summary judgment in defendants' favor.

---

[79] 482 F.2d 825 (5th Cir. 1973).

[80] *Id.* at 827.

[81] *Id.*

[82] *Id.* at 828.

[83] *See, e.g.*, doc. 2016-3 at 77.

-15-

**D. Whether Defendants Are "Employers" Under the FLSA Was Not Raised in Defendants' Motion**

The FLSA only permits actions to recover unpaid overtime against "employers."[84] "Employer" is defined to "include[] any person acting directly or indirectly in the interest of an employer."[85] An employee may have more than one employer under the FLSA.[86] In the Ninth Circuit, whether an entity is a joint employer of an employee depends on an "economic reality" test.[87] "[C]ourts are to consider the totality of the circumstances of the relationship, including whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records."[88]

Although plaintiffs spend considerable time discussing this issue in their response, the issue was not raised in defendants' motion. Arguments raised for the first time in a reply brief are deemed waived.[89]

**E. Individual Defendants**

Defendants argue that "there is no evidence in this record that establishes the involvement of any of the named individuals" in any potential FLSA violation.[90] Plaintiffs respond only that "Jones is responsible for everything that happens in the HR

---

[84] *See* 29 U.S.C. § 216(b).

[85] 29 U.S.C. § 203(d).

[86] *See* 29 C.F.R. § 791.2(a).

[87] *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997).

[88] *Hale v. State of Ariz.*, 993 F.3d 1387, 1394 (9th Cir. 1993).

[89] *Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010). Defendants state in the background section of their motion that "SCI is a holding company with no employees." Doc. 2004 at 6. There is no citation to legal authority or discussion of the "economic reality" test that bears on whether an entity is an "employer" within the meaning of the FLSA in their motion.

[90] Doc. 2004 at 17.

Department at the" SCI Co-op and that "Jones reports to . . . Ryan."[91] Although there might be an argument that neither Jones nor Ryan is an "employer" within the meaning of the FLSA, that issue is not before the court. The problem with plaintiffs' argument is that there is no evidence connecting SCI's HR Department with the uncompensated overtime that is alleged. Therefore, deposition testimony that Jones runs the HR Department at SCI and that she reports to Ryan does not create a genuine dispute as to any *material* fact.

**F. Calculation of Overtime Rate**

Defendants maintain that "[h]ow each [p]laintiff was paid and what they were paid for will need to be confirmed."[92] The court does not perceive any legal argument that would bear on defendants' motion.

## V. CONCLUSION

For the reasons above, defendants' motion at docket 2004 is **GRANTED** in part and **DENIED** in part as follows:

1) It is **GRANTED** with respect to the individual defendants. Plaintiffs' claims against Jones, Petteway, Ryan, Briggs, and Douglas are **DISMISSED**.

2) It is **DENIED** with respect to plaintiffs' claims against SCI, SCI Western, and SCI Co-op.

DATED this 24th day of January 2012.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[91] Doc. 2014 at 10.

[92] Doc. 2004 at 17.